SNELL, Appellee and Cross–Appellant,

v.

SALEM AVENUE ASSOCIATES et al., Appellants and Cross–Appellees.

[Cite as *Snell v. Salem Ave. Assoc.* (1996), 111 Ohio App.3d 23.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 15169, 15429 and 15462.

Decided May 10, 1996.

24

*Kurt Denkewalter, Thomas P. Whelley II* and *S. Renée Applegarth,* for appellee.

*Thomas J. Replogle,* for appellants.

BROGAN, Presiding Judge.

This matter is before the court on the appeal of Dr. Laszlo Posevitz, Salem Avenue Associates, and Dr. Robert Black, appellants and cross-appellees, from the decision of the trial court granting summary judgment against them on Counts I–VI of the complaint. In addition, Leonard Snell, appellee and cross-appellant, appeals from the decision of the trial court granting summary judgment in favor of the appellants on Counts VII, VIII, and IX of the complaint. Also pending is Snell's motion to strike portions of appellants' briefs.

The present dispute had its genesis in the 1986 sale of the Salem Professional Building, which had previously been purchased by Black and Posevitz in 1980, through the Salem Avenue Associates partnership. The building itself is located on Salem Avenue, in Dayton, Ohio. After occupying the building for several years, Black and Posevitz discussed selling the building to two other doctors, Singer and Hanshaw, in September 1986. At the time, Singer was beginning practice, and Hanshaw had just come to the area from West Virginia, seeking to develop a practice. Singer and Hanshaw were offered several options, including rental, outright purchase, or a condominium-type arrangement, and chose to buy the building. A purchase agreement was then signed by Singer and Hanshaw, and a closing was set for December 12, 1986. By the terms of the purchase agreement, closing was required to take place no later than December 20, 1986.

Before the closing took place, a third party, Leonard Snell, became involved. Snell was a builder/developer, and was approached by Singer about investing in the building. After being told by Singer that part of the income stream would be

lease commitments from the persons selling the building, Snell agreed to consider investing. Singer then sent Snell copies of the tenant leases and tenant roll. At the time of the proposed sale, the building had six of eight suites occupied and all of the tenants had leases, with the exception of a Dr. Siehl, who had been a tenant for many years. Posevitz and Black occupied suites 8 and 3, respectively.

After reviewing the information and viewing the building, Snell decided to invest. SHS Realty Group, with three general partners (Singer, Hanshaw, and Snell), was then formed to manage the building. Snell was aware that the property was located in a declining area of town, but was also aware that Posevitz and Black were prominent members of the medical community with the ability to attract other tenants. Hanshaw also had the same expectation. In fact, one of the aims of Posevitz and Black was to develop the building into a specialty or referral center.

At the closing, Snell presented lease agreements for Posevitz and Black to sign. While Snell claimed to have sent the agreements to Posevitz and Black approximately two weeks before the closing, their testimony was that they had never seen the leases before. For reasons which will become apparent, this dispute is not material. The testimony is undisputed, however, that Posevitz and Black refused to sign the lease agreements at the closing. Posevitz and Black then refused to go forward with the sale. Posevitz testified, "[W]e walked out on the transaction. We didn't want to sell the building."

The testimony is also undisputed that Snell refused to go through with the real estate transaction without signed lease agreements. In addition, Hanshaw did not want to get involved in the transaction if an agreement could not be reached on the paperwork.[1] As a further matter, the bank that financed the purchase wanted leases in effect before the deal could be closed. After some discussion among Hanshaw, Singer, and Snell, the bank's attorney, Art Millonig, then prepared two one-page instruments that were handed to Posevitz and Black by Snell. These documents (referred to by the trial court as "letter agreements") were identical, except that one was signed by Black and the other was signed by Posevitz, and each designated the suite the particular doctor was currently occupying, i.e., either 3 or 8.[2]

For example, the letter agreement signed by Posevitz was dated December 12, 1986, was addressed to Singer, Hanshaw, and Snell, and stated as follows:

---

1. No testimony from Singer was presented to the trial court.

2. For simplicity, since these documents have been referred to and attached to various documents and depositions, they will be referred to as they were by the trial court, as "letter agreements."

"Gentlemen:

"As an inducement for you to complete the purchase of the property located as [*sic* ] 1217 Salem Avenue, the undersigned does hereby agree to lease Suite No. 3 according to the following provisions subject to approval as to the form of the lease by the undersigned's attorney; which approval shall not be unreasonably withheld:

"A. Seven (7) year lease term.

"B. Initial base rental equal to current lease rate plus 11% increase.

"C. After first year and thereafter, rental will increase by 5% per year over prior base rental."

The amounts of rent and the lease term in the letter agreements were the same as those in the lease agreements Snell had brought to the closing. However, the original lease agreements contained numerous other provisions placing additional obligations on the lessees, including payment of operational costs like increased property taxes, insurance, and utilities as an addition to the base rent, maintenance of equipment within the leased premises, and provision of insurance to cover property damage or personal injury.

After the letter agreements were signed by Black and Posevitz, the closing went forward, and they received $217,017 from the sale after payment of an existing mortgage. The profit was split equally between Black and Posevitz. Snell also signed a note, along with Hanshaw, Singer, and their wives, obligating himself to pay $440,000 to First National Bank for the building. After the sale, Hanshaw and Singer moved into the building, and Black and Posevitz paid rent in accordance with the letter agreements, but did not pay anything for property taxes on the building, utilities, or maintenance. This arrangement was apparently satisfactory to all parties, because Posevitz and Black stayed for several years, continuing to pay pursuant to the letter agreements. Moreover, Snell did not send new leases to Posevitz and Black until October or November 1989.

In 1989, Posevitz left the building because he needed additional space. Black stayed until February 1992, at which time he was the only tenant in the building. Due to cash flow problems, Black's payment history had been sporadic, but when he paid, he paid based on the terms in the letter agreement. Singer left the building two or three years after the sale, without having paid rent, and Hanshaw also left within the same approximate period of time, based on the fact that he felt he would have better financial opportunities for his practice in another area. Hanshaw continued to pay rent after he left, until 1990, when he stopped because Singer was not paying anything.

After Posevitz left, Snell was not able to rent out the space Posevitz had vacated. However, Snell was able to rent Black's space on October 1, 1992, and since that time has received $1,500 per month for Black's suite.

Following the above events, Snell initiated the present action against Posevitz and Black and Salem Avenue Associates, for the remaining payments due under the letter agreements. Counts I–VI of the complaint were based on the contract, and requested monetary relief, specific performance, and declaratory judgment. Counts VII–IX were based on fraud and misrepresentation, and requested rescission of the purchase agreement as well as punitive and compensatory damages. As was noted above, the trial court awarded summary judgment in favor of Snell on the contract claims and in favor of Posevitz, Black, and Salem Avenue Associates on the fraud claims. Both sides appealed.

The standards for assessing the propriety of summary judgment awards are well established. As was noted by this court previously in *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 649 N.E.2d 42:

"The Ohio Supreme Court has interpreted [Civ.R. 56] to say:

" 'The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.' " *Id.* at 600, 649 N.E.2d at 43–44, quoting *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

In *Doner,* this court also commented:

"In a summary judgment motion, the nonmoving party shoulders the burden to 'produce evidence on any issue for which that party bears the burden of production at trial.' *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. '[S]ince the propriety of summary judgment is a question of law,' *Children's Med. Ctr. v. Ward* (1993), 87 Ohio App.3d 504, 508, 622 N.E.2d 692, 695, we apply the same standard as the trial court in our review of the court's disposition of the motion; in other words, our review is *de novo. Id.* However, we do not weigh the evidence; we 'accept the evidence properly before [us] and, with respect to the merit issues involved, construe the evidence most strongly in favor of the claims of the party against whom the motion is made.' *Buckingham v. Middlestetter* (Mar. 22, 1993), Montgomery App. No. 13575, unreported, 1993 WL 81827." *Id.* at 600, 649 N.E.2d at 44.

With these standards in mind, we will now consider the assignments of error presented by the parties. Posevitz and Salem Avenue Associates have presented four assignments of error, while Black has submitted only three. To a large extent, the issues overlap, and they will be addressed together.

I

The trial court found that a new contract was formed at the closing, which resulted in "the sellers exchanging the letter agreements for the purchase price agreed to earlier." In their first assignments of error, Black and Posevitz claim that no consideration for the new contract existed because the sellers were already contractually obligated to close by the written terms of the purchase agreement entered into on October 2, 1986. However, this argument misses several important points.

First, while Singer and Hanshaw were parties to the October 2, 1986 purchase agreement, Snell was not a party. Consequently, Snell was not contractually bound vis a vis the sellers to do anything. Second, by its own terms, the purchase agreement only required that a closing take place by December 20, 1986. Since the events in question occurred on December 12, 1986, the parties were not legally obligated to do anything on the day of the closing. Finally, and most important, the sellers themselves disavowed the purchase agreement and any obligations imposed thereto on the buyers. In Posevitz's own words, "we walked out on the transaction. We didn't want to sell the building." The buyers likewise were unwilling to proceed with the purchase under the circumstances. Consequently, both sides chose to abandon the original contract.

In *Hunter v. BPS Guard Serv.* (1995), 100 Ohio App.3d 532, 541, 654 N.E.2d 405, 411, the court noted that "[p]arties who have entered into a contract may, by mutual consent or conduct, abandon the contract which they have entered into." Abandonment occurs when "the acts of one party, which are inconsistent with the existence of the contract, are acquiesced in by the other party." *Id.* The contract is then dissolved and the parties are placed in their original positions, with no potential suit for breach of contract. *Id.*

In the present case, this is precisely what occurred. When the parties abandoned the contract, they were then free to make whatever agreements they wished. Thus, the doctrine of past consideration or pre-existing duty has no application to this case, and the trial court was correct in concluding that the parties had entered into a new contract, based on sufficient consideration.

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Brads v. First Baptist Church of Germantown* (1993), 89 Ohio App.3d 328, 336, 624 N.E.2d 737, 743. In the present case, benefits to all

parties were contemplated, in that Black and Posevitz anticipated receiving substantial profit from the sale, and Snell, Singer, and Hanshaw gained the building and the expected leases as assets. Detriment to Snell, Singer, and Hanshaw also occurred through their obligation on the mortgage note.

■ However, even if the contract had not been abandoned, the court finds that additional consideration existed under the past-consideration doctrine. Specifically, at the time of the closing, the bank did not want to go forward without signed leases in effect. Since the funds provided by the bank would pay off the existing mortgage of Posevitz and Black, as well as provide them with approximately $200,000 in profit, a benefit to Posevitz and Black occurred as a result of the signed leases and the closing of the sale. In addition, Snell, who was not a party to the original purchase agreement, obligated himself financially on the mortgage note, thereby suffering a detriment, as promisee.

■■ In responding to the appellants' arguments, Snell also contends that the contract entered into at the time of the closing was a novation. Although novation typically arises in situations where a third party is substituted for an obligation of one of the principals to a pre-existing contract, authority in Ohio does exist for finding a novation where the parties to a contract make a subsequent agreement. See, *e.g.*, *Ridenour v. Haynes* (App.1931), 11 Ohio Law Abs. 131, 132, and *Suburban Trust & Sav. Bank v. Campbell* (1969), 19 Ohio Misc. 74, 80, 48 O.O.2d 250, 253, 250 N.E.2d 118, 122.

The requirements for novation are as follows:

"A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by the substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration. * * * The discharge of the existing obligation of a party to a contract is sufficient consideration for a contract of novation." *McGlothin v. Huffman* (1994), 94 Ohio App.3d 240, 244, 640 N.E.2d 598, 601.

Based on the previous discussion, and as an alternative holding, we find that a novation occurred on the day of the closing, when the parties consented to a new valid contract. The consideration for the contract is as set forth above and, in addition, was the discharge of each party's existing obligations under the previous contract. At the point where the sellers repudiated the contract and "walked away" from the sale, the buyers may have had an enforceable claim for breach of contract or specific performance. Likewise, the sellers may have chosen to enforce their remedies under the contract, including forfeiture and retention of the earnest money when the buyers presented an additional requirement for the sale. However, the parties chose neither of these alternatives, but elected to form a new contract, with an additional party, who obligated himself to his

detriment on the mortgage. Certainly the desire of all parties to proceed with the transaction in order to reap the benefits and avoid liability on the original contract was ample consideration for the novation.

█ The second issue raised by Black and Posevitz in this context is that even if the past-consideration doctrine does not bar Snell's claim, summary judgment was improper because issues of fact existed concerning Black's and Posevitz's intent to be bound by the documents they signed. We do not find this argument persuasive. In Ohio, the law is settled that "[w]here a contract is clear and unambiguous, its construction and effect are a matter of law." *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 328, 594 N.E.2d 9, 14. See, also, *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus.

In such cases, summary judgment is appropriate. *Mills v. Colonial Life & Acc. Ins. Co.* (1987), 35 Ohio App.3d 29, 518 N.E.2d 1223. Moreover, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* at 30, 518 N.E.2d at 1224–1225. Resort to extrinsic evidence is proper only when the language of the contract is unclear. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 636, 597 N.E.2d 499, 501.

█ We do not find any ambiguity in the letter agreements. All essential terms of the contracts are set forth within the four corners of the documents: the lease terms, lease amounts, and percentages of increase in the lease amount during the seven-year lease period. Nothing more was necessary for the documents to be operative, and the parties apparently acknowledged this, as they operated pursuant to the agreements for several years after December 12, 1986. For example, Posevitz and Black continued to pay rent, including the increased amounts set forth in the letter agreements, and SHS maintained the building and collected rent. Consequently, because the trial court was correct in finding that a new contract existed, the first assignment of error of Posevitz and Black is overruled.

## II

In their second assignment of error, Posevitz and Black contend that the trial court erred in using parol evidence to find that leases were an implied condition in the original purchase agreement. In this context, appellants claim that parol evidence on this point was inadmissible because the original purchase contract was unambiguous and integrated all of the parties' intentions. We do not agree with this position, for several reasons.

First, it should be noted that appellants do not feel that the trial court expressly found that the leases were an implied condition of the original purchase agreement. Rather, appellants infer this from the trial court's comments about the fact that the parties had differing expectations at the closing. However, we do not believe the trial court made such a finding. Instead, the court below was simply reciting the undisputed facts evident at the closing. Snell testified that he believed the sellers had agreed to lease the premises; on the other hand, Posevitz and Black testified they had not seen the lease agreements before the closing.

While this is a dispute in facts, it is not material, either for purposes of summary judgment or for purposes of the transaction that was ultimately consummated. The fact is that regardless of what understanding the parties brought to the closing, no one was willing to proceed with the transaction as originally structured. The original parties (Posevitz, Black, Hanshaw, and Singer) abandoned their previous agreement on the day of the closing. As was previously noted, the testimony on this point is undisputed. Consequently, parol evidence of discussions about lease agreements before the closing, in connection with the purchase agreement, is irrelevant. Since a new contract was entered into at the closing, with an additional party (Snell), previous discussions about lease agreements have no bearing on the issues in this case.[3]

Even if implied conditions were at issue, the fact is that the purchase agreement entered into on October 2, 1986 by Posevitz, Black, Singer, and Hanshaw neither provided that it constituted the entire agreement of the parties nor contained any specific provisions pertaining to leases. Thus, under the case law cited by Black and Posevitz, the trial court could properly have found an implied condition. For example, in *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 52, 544 N.E.2d 920, 921, the contract in question stated that the agreement constituted the entire contract between the parties. In contrast, however, the purchase agreement for the professional building on Salem Avenue had no provision integrating all previous agreements of the parties. In addition, the law is that implied covenants in a contract may be permissible if the matter in question is not specifically covered by the written terms of the contract. *Kachelmacher v. Laird* (1915), 92 Ohio St. 324, 110 N.E. 933. Because the purchase agreement for the professional building did not specifically mention leases, the trial court would not have erred in finding the

---

**3.** If these discussions had any relevance, it might be to issues of the statute of frauds and the conveyances statute. The fact that Snell insisted on lease agreements as a condition of purchase is relevant to these matters and is discussed below. However, Snell's comments in this context were made at the closing, and it is undisputed that all parties were aware at that time of Snell's requirement of leases. Consequently, what the parties discussed before the closing is irrelevant even to these issues.

leases to be an implied condition. However, since this was not a basis for the court's decision, and since discussions of leases before closing are irrelevant for purposes of our decision, we find no merit to appellants' arguments. Accordingly, the second assignment of error is overruled.[4]

### III

In the third assignment of error, Posevitz argues that the trial court erred in finding that partial performance of the lease agreements satisfied the formal requirements of the statute of frauds.[5] Posevitz's argument in this regard is that the partial performance doctrine has not been complied with because the acts in reliance required under that doctrine, *i.e.*, the closing, were not exclusively referable to the letter agreements, but were also referable to obligations under the purchase agreement previously entered into by Singer and Hanshaw. Again, we do not agree.

As the trial court noted, the Supreme Court in *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194, paragraph four of the syllabus, held that failure to comply with the technical requirements of the conveyances statute could be overcome by application of the partial performance doctrine, as follows:

"Part performance to be sufficient to remove an agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code) must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo."

As was mentioned above, the original purchase agreement was abandoned and new agreements, the letter agreements, were made between the original parties plus an additional party, Leonard Snell. The letter agreements were addressed to Singer and Hanshaw (the original parties to the purchase agreement), and to the additional party, Snell. These letter agreements stated that they were an inducement to Singer, Hanshaw, and Snell to complete the purchase of the Salem Avenue property. The letter agreements also provided for increased rent eleven percent over the current rent, plus a five-percent escalator in succeeding years. Thereafter, Posevitz and Black paid their rent in specific accordance with the new terms set forth in the letter agreements.

---

4. In view of this decision, Snell's motion to strike Assignment of Error No. 2 of both Black and Posevitz is moot and is therefore overruled.

5. Black did not assert this assignment of error and claimed as his final assignment of error the calculation of damages.

After Black and Posevitz signed the letter agreements, Snell, together with Singer, Hanshaw, and their wives, signed a $440,000 note, financially obligating themselves to pay for the Salem Avenue property. The undisputed evidence is that these acts were exclusively referable to the letter agreements, particularly in light of the wording in the letter agreements that they were "an inducement for you [Snell, Hanshaw, and Singer] to complete the purchase of the property."

We find the evidence also undisputed as to the other requirements set forth in *Delfino*, as the SHS partnership changed its position to its detriment by paying the sellers $430,000 and incurring a mortgage in the amount of $440,000. Since the sale has long been complete and funds were dispersed (releasing Black and Posevitz from their obligation of $180,173.69 to the previous owner), returning the parties to the status quo would be impractical or impossible.

Thus, we do not agree with Posevitz that the acts were referable to the original purchase agreement. Because the original purchase agreement was abandoned, the acts of the parties were performed in conjunction with the letter agreements, not the original purchase agreement.

Moreover, the case law cited by Posevitz does not support his position. For example, *Armstrong v. Kattenhorn* (1842), 11 Ohio 265, involved an oral lease made by lessees already in possession of premises under a previous lease. In rejecting the new lessor's claim for rent when the premises were vacated before the end of the new lease term, the court stated that "with a tenant in possession, in case of a parol agreement for different terms of holding, if no acts are performed which clearly show that the possession is continued under the last agreement, it will be referred to the original tenancy and such parol contract is void." *Id.* at 272. Although the court rejected the parol agreement, the important point is that the decision was based on the lack of evidence, *i.e.*, the rent was the same, and the fact that the lessee paid rent was as attributable to the old agreement as it was to the new one. *Id.* at 273. *Crawford & Murray v. Wick* (1868), 18 Ohio St. 190, involved the same kind of situation, where although a new oral agreement had allegedly been entered into, the parties continued to operate under the terms of the previous agreement. *Id.* at 202. Therefore, in either case, the courts had no basis on which they could conclude that the oral agreements had validity, since the acts taken by the parties were as easily attributable to the old agreements as to the new. By contrast, the rents paid by Posevitz and Black after the date of the closing incorporated the new amounts set forth in the letter agreements, including the initial eleven percent raise and the five-percent escalator called for in each subsequent year of the leases.

Because the trial court correctly applied the partial performance doctrine, Posevitz's assignment of error number three is without merit and is overruled.

## IV

The remaining assignments of error raised by appellants relate to the damages assessed by the trial court. In this context, Posevitz contends, first, that the court erred by ignoring the plaintiff's failure to mitigate and, second, that evidence existed of a fair market value for Posevitz's former suite. Black's claim is premised only on the contention that the court's award of damages against him exceeded the amount shown by the evidence.

In its decision, the trial court said that mitigation of damages would not be considered because the defendants had not put on any evidence of failure to mitigate. We find that the evidence was woefully inadequate, but find issues of fact necessitating a limited remand.

The action below was filed in October 1993, and Snell's motion for summary judgment was filed over a year later, after substantial discovery had taken place. In his motion, Snell discussed damages, and supported the discussion with an affidavit, relating the lease amounts, dates the defendants had vacated, and amounts due. Snell's affidavit also stated that he employed all commercially reasonable means to relet Posevitz's suite, but that he had been unable to do so.

Subsequently, on November 14, 1994, Posevitz filed his memorandum in opposition to the motion for summary judgment. While Posevitz argued in the memorandum that mitigation could not be supported by Snell's "conclusory statement" that he had taken all commercially reasonable steps to mitigate, no specific evidence rebutting this statement was offered, other than a bare mention in the factual part of the memorandum to the fact that Black moved from the building after various conditions became unacceptable and complaints were received from his patients. However, this statement was not made in connection with the issue of failure to mitigate damages.

In *S & D Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.* (1991), 71 Ohio App.3d 228, 593 N.E.2d 354, this court noted the "cardinal rule of contracts that an injured party is under a duty to mitigate its damages and may not recover those damages which it could have reasonably avoided." *Id.* at 238, 593 N.E.2d at 361. In that case, we also noted a limitation on the duty to mitigate, in that a party is not required " 'to make extraordinary efforts, or to do what is unreasonable or impracticable. Ordinary and reasonable care, diligence and prudence are the measure of the duty.' " *Id.*, quoting *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164, 168, 4 OBR 264, 268, 446 N.E.2d 1122, 1127.

This issue presents difficult questions. As was noted by the trial court, mitigation would normally be a jury question, and the memoranda below were not overly helpful in directing the court to factual issues. Moreover, Black did not even raise mitigation on appeal, probably because the evidence showed that Snell

was able to rent Black's office space within approximately seven months, although at a decreased rate. However, in view of this court's duty to consider summary judgment *de novo*, the entire record must be examined, and it does appear that factual issues exist concerning whether Snell used ordinary and reasonable care in mitigating damages.

In this context, it should be emphasized that no evidence was presented that Snell failed to take commercially reasonable steps with respect to attempts to rent. Besides Snell's own statement by way of affidavit, his deposition shows that he contacted numerous brokers and offered incentives to them in connection with renting the premises. The sole concern we have is with issues raised by Black's testimony about the condition of the premises when he left in 1992. On one hand, Posevitz said he had no complaints about the premises when he left in 1989, and it must be assumed that the condition was acceptable at that time. However, Black's deposition indicates that he had complaints from patients about the condition of the premises and also found human excrement in the hallways on at least two occasions. Black also testified about security problems and leaking of the portico due to disrepair during the late 1980s to 1990. Further, Black's letter of December 17, 1991 announcing his intent to vacate also mentions problems with the appearance, cleanliness, and repair of the building.

 While Black's concerns could be dismissed as the attempts of a tenant in arrears to avoid liability, these are credibility issues, which we cannot weigh on summary judgment. The fact is that even if Snell listed the property with brokers, his failure to maintain the property in an appropriate condition could have contributed to his inability to rent the premises. Accordingly, given the issues of fact in this context, the court sustains Posevitz's Assignment of Error No. 4 and remands this matter on the limited issue of whether Snell failed to mitigate his damages by using ordinary and reasonable care, including maintaining the appearance of the building.

Snell has objected to Posevitz's argument on damages, claiming that it is merely an attempt to assert the issue of constructive eviction, which was not raised below. The court does not agree. The issue of mitigation was raised below, although perfunctorily, and Posevitz has conceded he did not leave the building because of its condition. Therefore, Posevitz is entitled on remand only to attempt to show that Snell failed to use reasonable care to mitigate damages. In addition, the burden will be on Posevitz to establish this affirmative defense. *Young v. Frank's Nursery Crafts, Inc.* (1991), 58 Ohio St.3d 242, 244, 569 N.E.2d

1034, 1037.[6]

 The second issue raised by Posevitz in connection with Assignment of Error No. 4 is that the trial court erred in awarding the full amount of the remaining lease payments because there was no evidence (and thus no basis for the court's finding) that the fair market value of the property was zero. The undisputed facts indicate that Posevitz's suite was not rented after Posevitz left, and that Black was the only tenant remaining in the building at the time Posevitz vacated the premises in 1989. Thereafter, Snell was unable to rent Posevitz's suite, but did rent Black's suite, in October, 1992, at a lesser rate. In the absence of any evidence that Posevitz's suite could have been rented, the only conclusion that could be drawn is that the fair market value of Posevitz's leased premises was zero. Consequently, unless Posevitz is successful on remand in establishing that Snell did not use ordinary care to mitigate his damages, Posevitz would be liable for the entire rental amount awarded by the trial court, *i.e.*, $108,973.94 plus prejudgment interest.[7]

Ironically, Black has not disputed the issue of mitigation, although it is his testimony that has allowed reversal of the damages award against Posevitz. Instead, in his third assignment of error, Black has disputed the amount of damages only, arguing that the trial court could properly have awarded just the sum of $10,046 at most, based on the evidence, or perhaps even given a credit to Black, based on the $1,478 rent being paid at the time Black left the premises (which is a lesser amount than was received for the property when it was leased again after Black left). Snell makes no response to this argument other than to contend that Black waived this issue by not raising it in the trial court.

 It is true that Black did not respond in detail to the damages issue in the trial court. In response to Snell's motion for summary judgment, Black filed a brief, two-page memorandum incorporating the arguments of Posevitz and making no specific mention of damages.[8] In *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, the Supreme Court noted that while "it is within a Court of Appeals' discretion to consider errors not specifically set forth in the record and separately argued in counsel's brief, the fundamental

---

6. In view of this holding, Snell's motion to strike Assignment of Error No. 4, issue 1, of Posevitz is overruled. We did not consider the issue of constructive eviction, and Posevitz is not entitled to raise that issue on remand.

7. Based on this reasoning, Snell's motion to strike Assignment of Error No. 4, issue 2, of Posevitz is overruled. Posevitz did contest damages below and is entitled to contest them on appeal.

8. This memorandum was not included with the documents sent to the court of appeals, but was received from Black's counsel, at the court's request.

rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Id.* at 210, 24 O.O.3d at 317, 436 N.E.2d at 1003, citing *State v. Glaros* (1960), 170 Ohio St. 471, 11 O.O.2d 215, 166 N.E.2d 379, paragraph one of the syllabus. On the other hand, the court of appeals also has the ability to pass on errors neither briefed nor pointed out in the record, and "to determine such issues in the interest of justice that have not been raised by the parties." *Matthews v. Matthews* (1981), 5 Ohio App.3d 140, 146, 5 OBR 320, 326–327, 450 N.E.2d 278, 285. See, also, *Garrison Carpet Mills v. Lenest, Inc.* (1979), 65 Ohio App.2d 251, 254, 19 O.O.3d 208, 210, 417 N.E.2d 1277, 1279, and *C. Miller Chevrolet, Inc. v. Willoughby* (1974), 38 Ohio St.2d 298, 301, 67 O.O.2d 358, 359–360, 313 N.E.2d 400, 403. A further consideration is the well-established doctrine that cases should be decided on their merits. *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 222, 18 OBR 281, 282–283, 480 N.E.2d 802, 804.

■ For these reasons, we will consider the issue of Black's damages, noting that mitigation has been raised on appeal by another party, and Black himself has contested the award of damages.[9] The first observation that must be made is that because of the remand of the damages issue vis-a-vis Posevitz, the only logically consistent decision would be to likewise remand the issue of mitigation of damages after Black's breach of the lease agreement. Although Black's suite was rented within several months, and evidence of some attempt to mitigate is apparent, the fact is that if the premises had been in satisfactory condition, Snell may have been able to rent the suite sooner or for a higher amount. Again, factual disputes exist, and it is not our place to resolve those issues.

As an additional matter, error as to the calculation of Black's liability on damages plainly appears in the record. The undisputed evidence was that Black was in arrears during the time he occupied the premises. However, no evidence was presented of specific amounts of back rent other than the mere mention of a $9,342.13 figure in Snell's motion for summary judgment. This amount is not supported by any testimony or affidavit, and counsel for Snell does not cite any part of the record indicating the amount of back rent that Black owed upon vacation of the premises. It does appear that the trial court simply adopted this figure, which is not surprising, since the parties gave the court such scant information to work with.

■ Nonetheless, an independent review of the record demonstrates that the amount of back rent for Black is in dispute or is not clearly set forth. In this context, it should be emphasized that Snell's affidavit is not fully informative, and

---

9. Based on the reasons in the main text, Snell's motion to strike Black's third assignment of error is overruled.

Snell himself, when asked during deposition about damages, did not name a specific amount for back rent owed. In this context, there is also some contradiction in figures. For example, Exhibit W attached to Snell's deposition indicates a figure of $20,229.38 owed through December 1991, and Exhibit X, which is a summary of accounts receivables dated May 1, 1992, shows a figure for Black of $13,484.70 as of that date. Moreover, both these documents appear to have been generated in May 1992. Part of the problem might arise from the inclusion of late charges in Exhibit W, which are clearly not a part of the letter agreements. In any event, it is unclear where Snell obtained the figure of $9,342.13 reflected in the motion for summary judgment. Black was also uncertain in his deposition of the precise amount owed, since he did not handle his own bookkeeping. Both sides are responsible for this error, since they did not give the trial court sufficient information. However, that fact is no reason to provide Snell with a potential windfall.

On remand, the amount of back rent owed by Black at the time of breach is to be determined, by taking into consideration the amounts Black paid and the amounts due under the letter agreement. Based on the documents in their possession, the parties should be able to stipulate that amount. The amount owed after breach in February 1992 until expiration of the lease agreement is already established, based on the letter agreements, but Black will have the opportunity to raise as an affirmative defense whether Snell used reasonable care to mitigate damages.[10] In this regard, the undisputed facts indicate that Black paid rent in accordance with the original eleven-percent escalator and never contested the additional escalator amounts in succeeding years. The fact that he paid less at times was a result of cash flow problems, and notations on a number of checks refer to payment of back escalation amounts. Consequently, we find Black's contention that the trial court erred in calculating the amount of rent due from Black to be without merit.

Based on the foregoing, Black's third assignment of error is sustained. On remand, Black is entitled to show that Snell did not use reasonable care in mitigating damages, bearing in mind, again, that this is an affirmative defense. On remand, however, neither Black nor Posevitz is entitled to contest the amounts due pursuant to the letter agreements, as Snell's entitlement to those amounts, absent failure to mitigate, has been established. On remand, Black and Snell should also resolve the issue of the amount of back rent or arrearage due at

---

10. The amount due under the letter agreement would be $20,054, as reflected in Snell's motion for summary judgment. This amount includes $13,181 due for seven months in 1992 while Black's suite was vacant, $1,149 for the three remaining months in 1992, based on the difference in Black's lease rate and the new tenant's lease rate, and $5,724 (the amount of Black's lease for 1993 minus the lease rate of the new tenant).

the time of breach, with this issue to be heard by the trier of fact if the parties cannot stipulate the amount. Remand is limited to these specific issues, since the rest of the issues treated below are free from error. *Mast v. Doctor's Hosp. N.* (1976), 46 Ohio St.2d 539, 75 O.O.2d 556, 350 N.E.2d 429. Accordingly, the third assignment of error of Black is sustained and the fourth assignment of error of Posevitz and Salem Avenue Associates is sustained to the extent noted herein.

## V

As a cross-assignment of error, Snell contends that the trial court erroneously awarded summary judgment to Black and Posevitz on the issues of fraud and fraudulent inducement. Snell's position stems from his contention that factual issues exist concerning the appellants' intention not to honor promises they made to enter into leases. In response, appellants point out that claims of fraud cannot arise because this action is founded on a contract. They further note that even if claims for fraud were proper, no factual issues exist. As a final matter, Posevitz asserts the bar of the statute of limitations.

The trial court did not address the issue of the statute of limitations, although that issue was raised in Posevitz's reply brief in support of summary judgment. We find that fraud claims against Posevitz are barred by the statute of limitations. In this context, R.C. 2305.09(C) provides for a four-year statute of limitations for fraud actions, and the action must be initiated within four years after the misrepresentation should have been discovered. *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 454, 635 N.E.2d 1326, 1333. The law with respect to discovery is as follows:

"No more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence." *Id.*

We do not find any issues of fact concerning whether Snell should have been alerted sufficiently to look into the alleged wrongdoing. The evidence submitted below by Snell himself in his response memorandum opposing summary judgment reveals that Snell received a letter from Posevitz's attorney on May 27, 1989, stating that Posevitz would be relocating his office. Another letter was received by Snell around July 28, 1989. In this letter, Posevitz said that he would be vacating around October 1, 1989, and that Snell was welcome to begin showing the suite or advertising for a new tenant. These communications were more than enough, based on any interpretation, to alert Snell to investigate the alleged wrongdoing. Although Snell claims that he was lulled by statements of Posevitz that he was "looking into" the lease issue, the law is that "[o]nce

sufficient indicia of misrepresentation are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false sense of security to toll the period of limitations." *Id.,* citing *Kimmelman v. Advest, Inc.* (Mar. 19, 1993), Lucas App. No. L–92–177, unreported, 1993 WL 77192.

Based on the foregoing, we find that fraud claims against Posevitz are barred, since the present action was not filed within four years after July 28, 1989, which was the date Snell received the letter from Posevitz.

As an additional matter, however, we find no disputed issues of material fact regarding the fraud claims. The Supreme Court has indicated that the requirements for fraud claims are as follows:

"(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712.

Snell has contended that Posevitz and Black made misstatements at the closing when they agreed to sign future lease agreements but had no intention of doing so. Snell further claims that he was induced by these misrepresentations into buying the building. Although the law provides that "fraud cannot be predicated upon a representation concerning a future event, * * * a promise made with a present intention not to perform it is a misrepresentation of an existing fact—the speaker's present state of mind." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 742, 607 N.E.2d 1140, 1145.

The record is devoid of any evidence that Posevitz and Black intended, at the time of closing, not to sign future leases. Instead, they signed the letter agreements, and then continued to pay rent in accordance with the agreements for several years—almost three, in the case of Posevitz, and almost five, in the case of Black. Further, no lease agreements were even sent to Posevitz and Black for almost three years after the closing, and the agreements that were sent contained the same terms as the original leases Posevitz and Black had refused to sign. Based on these undisputed facts, we find no evidence of fraudulent intent on the part of Posevitz and Black. Accordingly, Snell's single cross-assignment of error is overruled.

As a final matter, the court overrules appellee's motion to strike Posevitz's second and fourth assignments of error and Black's third assignment of error. See footnotes 4, 6, and 9, above.

Based on the foregoing discussion, the fourth assignment of error of Posevitz and the third assignment of error of Black are sustained, and this matter is remanded to the trial court for further proceedings relating only to these items: (1) consideration of the affirmative defense that Snell did not use reasonable care in mitigating damages, and (2) the precise amount of back rent owed by Black, pursuant to the letter agreement, at the time he vacated the premises. The first, second, and third assignment of error of Posevitz and Salem Avenue Associates are overruled. Likewise, the first and second assignments of error of Black are overruled. Finally, the sole cross-assignment of error of Snell and the motion to strike are overruled. The judgment of the trial court is affirmed with respect to the award of summary judgment on Counts I–VI and with regard to the award of summary judgment on Counts VII, VIII, and IX, but is reversed and remanded for consideration of the issue of mitigation of damages and back rent owed by Black, as set forth above.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

FREDERICK N. YOUNG and KERNS, JJ., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.