ZEMCIK, d.b.a. Owosso Refuse, Appellee,

v.

LaPINE TRUCK SALES & EQUIPMENT COMPANY, Appellant.

[Cite as *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72035.

Decided Jan. 7, 1998.

*Lawrence M. Baker,* for appellee.

*Persky, Shapiro, Salim, Esper, Arnoff & Nolfi Co., L.P.A.,* and *Donald N. Jaffe,* for appellant.

PORTER, Judge.

Defendant-appellant LaPine Truck Sales & Equipment Company ("LaPine") appeals from a summary judgment, jury verdict and treble damage judgment of $30,000 plus attorney fees and costs in favor of plaintiff-appellee Stephen Zemcik, d.b.a. Owosso Refuse ("Zemcik"), arising out of Zemcik's claim that defendant sold him a 1984 trash packer truck with a false odometer reading in violation of R.C. 4549.45. We find that the trial court erred in not entering summary judgment in favor of defendant on the grounds that the two-year statute of limitations (R.C. 4549.49[B]) barred Zemcik's action. We reverse and enter judgment for LaPine.

This case arose out of a negotiation for Zemcik's purchase of a used 1984 Ford LTS 8000 packer truck from LaPine in December 1991. Zemcik, who ran a trash-hauling business in Owosso, Michigan, saw LaPine's advertisement in a trade journal. Following telephone and other communications, the parties struck a deal for $21,100, which included LaPine's delivery of the truck to Zemcik in Michigan. The summary judgment proceeding reflected the following course of events.

On or about January 3, 1992, LaPine forwarded to Zemcik a Vehicle Order No. 8634 and, shortly thereafter, received the signed order back from Zemcik.

Zemcik paid the purchase price, and the packer truck was delivered to Zemcik on January 9, 1992 in Michigan.

LaPine's witness, Sandra Richards, stated that in January 1992, in connection with the sale of the packer truck, she had forwarded to Zemcik a number of documents referred to as "power of attorney," "exemption certificate and affidavit regarding sale to an out-of-state resident," "power of attorney to execute application for title," and notification of driver's license information and a federal identification number. These title documents, which would have allowed LaPine to obtain the new certificate of title in Zemcik's name, were not executed or returned at that time by Zemcik because of the problems he discovered with the truck on delivery. Ultimately, in October 1992, Zemcik executed and returned a second set of requested documents to permit transfer of the certificate of title.

In January 1992, after inspecting the truck, Zemcik found a number of problems and consulted an attorney, who, on January 28, 1992, corresponded with John Spera, LaPine's vice-president, asserting, *inter alia,* an odometer misrepresentation. Zemcik's attorney, Kathy Fitzgerald, stated in her January 28, 1992 letter to John Spera:

"Further, Mr. Zemcik was not provided an odometer statement at the time of transfer of the vehicle from LaPine, contrary to federal law, 15 U.S.C.S. 1981, *et seq.* It appears that LaPine's oral representation concerning the mileage of the vehicle (60,000 miles) was false, and that the vehicle may actually have in excess of 161,000 miles. As you are no doubt aware, an entity in violation of Federal Odometer Requirements is liable for treble damages, together with actual attorney fees incurred by the purchase. In as much as Mr. Zemcik has paid $21,000 to LaPine for a vehicle which has no value to him, Mr. Zemcik's base damages are at least $21,000. Accordingly, were this matter to be subject of litigation, a minimum of $63,000, together with actual attorney fees, would be sought."

Subsequent correspondence between counsel for the parties proved unsuccessful in resolving the matter. Zemcik's attorney wrote on April 8, 1992, that "the basis on which Mr. Zemcik questions the accuracy of the vehicle's odometer includes not only the condition of the vehicle itself but the fact that the vehicle has a hub odometer which contains a reading in excess of 161,000 miles."

The dispute over the condition of the truck continued during the ensuing months. LaPine resisted Zemcik's attempts at rescission, and Zemcik subsequently made substantial repairs to the truck. Finally, the certificate of title was transferred to Zemcik on October 29, 1992, after he returned the second set of necessary title papers duly executed.

On September 19, 1994, Zemcik filed a six-count complaint against LaPine and Sandra Richards, LaPine's title clerk, asserting false representations pertaining to the mileage on the vehicle (Count I); a violation of R.C. 4549.45 in not providing Zemcik with notice in writing as to the unreliability of the odometer (Count II); breach of an express warranty under R.C. 1302.26 on the basis of misrepresentations pertaining to the odometer mileage, revocation of acceptance, and a return of the purchase monies paid (Count III); odometer damages of $15,000 (Count IV); a violation of the Ohio Deceptive Trade Practices Act, R.C. 4165.02, for the odometer misrepresentations (Count V); and various improper notarial acknowledgments by Richards (Count VI). Plaintiff sought compensatory damages, punitive damages, treble damages under the Ohio Odometer Rollback and Disclosure Act (R.C. 4549.49), and attorney fees. Defendants filed their answer denying the claims.

The parties filed cross-motions for summary judgment. On January 17, 1996, the trial court denied LaPine's statute-of-limitations motion for summary judgment and overruled Zemcik's motion for summary judgment as to all of the counts except Count II, dealing with the violation of R.C. 4549.45. The court, without opinion or explanation, granted summary judgment to Zemcik on Count II and ordered the issue of damages to proceed to trial.

The case went to a jury trial before a visiting judge on December 11, 1996. At the conclusion of Zemcik's case-in-chief, the trial court dismissed defendant Richards from the case and directed a verdict for her as to Count VI. At the conclusion of all the evidence, the trial court granted defendant's motion for a directed verdict, dismissing Counts I, III, IV and V and submitted only the damage issue to the jury on Count II for the odometer violation of R.C. 4549.45 previously found on summary judgment. On December 12, 1996, the jury returned a verdict in favor of Zemcik for $10,000. By judgment entry filed on December 13, 1996, the court tripled the damages to $30,000 by virtue of R.C. 4549.49(A)(1). The trial court issued a further judgment entry on December 30, 1996, allowing Zemcik attorney fees of $20,000 and expenses of $2,177.53 pursuant to R.C. 4549.49(A)(2).

LaPine's motions for j.n.o.v. or a new trial were overruled, and this timely appeal ensued. No cross-appeal has been filed by Zemcik raising any issues adversely decided to him. We will address LaPine's Assignment of Error III first as we find it dispositive of the appeal.

"III. The trial court erred in failing to dismiss the complaint as the statute of limitations under R.C. § 4549.49(B) barred plaintiff's complaint for a violation of R.C. § 4549.45."

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to

judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied in *Wing*, 59 Ohio St.3d 108, 570 N.E.2d 1095. Presently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or a material element of the nonmoving party's claim." *Dresher* at 296, 662 N.E.2d at 276.

This court reviews the lower court's granting of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

The trial court found that Zemcik was entitled to summary judgment on Count II because LaPine had violated R.C. 4549.45, which states as follows:

"No person shall transfer a motor vehicle if the person knows or recklessly disregards facts indicating that the odometer of the motor vehicle has been changed, tampered with, or disconnected, or has been in any other manner nonfunctional, to reflect a lesser mileage or use, unless that person gives clear and unequivocal notice of such tampering or nonfunction or of his reasonable belief of tampering or nonfunction, to the transferee in writing prior to the transfer. In a prosecution for violation of this section, evidence that a transferor or his agent has changed, tampered with, disconnected, or failed to connect the odometer of the motor vehicle constitutes prima-facie evidence of knowledge of the odometer's altered condition."

R.C. 4549.49(A) provides for civil liability in the form of treble damages, attorney fees, and costs to a prevailing party proving a violation. R.C. 4549.49(B) sets forth the procedural requirements and statute of limitations applicable to a civil violation of R.C. 4549.45 as follows:

"An action to enforce any liability created under Sections 4549.41 to 4549.46 of the Revised Code may be brought in a court of common pleas without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises. For the purpose of this section, liability arises when the transferee discovers, or with due diligence should have discovered, the violation."

R.C. 4549.41(F) defines "transferee" as "the person involved in a transfer, to whom the ownership of a motor vehicle is transferred." Subsection (D) defines the word "transfer" as meaning "to change ownership of a motor vehicle by purchase, by gift, or, except as otherwise provided in this division, by any other means." We find that Zemcik discovered the odometer violation, or should have discovered the violation in the exercise of due diligence, in January 1992 when he took delivery of the truck, and at that point in time the two-year statute began to run. This was confirmed by his counsel's letters noting the odometer discrepancies, threatening suit and requesting rescission. Since Zemcik did not bring suit until September 1994, his suit was not timely brought.

The evidence is uncontroverted that Zemcik paid $21,100 for, and took physical possession of, the packer on January 9, 1992. At that time, Zemcik refused to execute the necessary title papers forwarded with the truck because of the problems he discovered, including odometer discrepancies. Ultimately, on October 29, 1992, an Ohio certificate of title was issued to Zemcik when Zemcik finally executed the papers to allow issuance of the new certificate of title. The complaint in the instant case was filed on September 19, 1994. On the summary judgment proceedings, LaPine argued, and the evidence established, that by January 28, 1992, when Zemcik's attorney wrote to LaPine, Zemcik knew of the discrepancy between the truck's dashboard odometer (sixty thousand miles) and

the hub odometer's record of one hundred sixty-one thousand miles. Zemcik's lawyer wrote that "at the time of the transfer of the vehicle from LaPine," the federal odometer law was violated. Zemcik's attorney continued: "It appears that LaPine's oral representation concerning the mileage of the vehicle (sixty thousand miles) was false and that the vehicle may actually have in excess of 161,000 miles."

Under the two-year statute of limitations of R.C. 4549.49(B), the "liability arises when the transferee discovers, or with due diligence should have discovered, the violation." We reject Zemcik's contentions that no violation occurred and the two-year period began to run only when the certificate of title issued in October 1992. The General Assembly provided for discovery and due diligence as the limitations trigger, not a formal title transfer. The threatening letters from Zemcik's attorney conclusively establish that the odometer discrepancies were in issue by January 28, 1992, and that the odometer law may have been violated. This put Zemcik on notice that he should pursue investigation of the matter with due diligence.

■ The obvious purpose of Ohio's Odometer Rollback and Disclosure Act (R.C. 4549.41 *et seq.*) is "to prohibit deceptive and unconscionable acts and practices by suppliers including * * * odometer rollbacks by automobile dealers." *Celebrezze v. Hughes* (1985), 18 Ohio St.3d 71, 72, 18 OBR 102, 104, 479 N.E.2d 886, 888. The basic thrust of the Act is therefore to discourage misleading or fraudulent practices arising from the rollback of vehicle odometers. For purposes of the civil liability section of the Act, "liability arises when the transferee discovers, or with due diligence should have discovered, the violation." An action must be brought "within two years from the date on which the liability arises." R.C. 4549.49(B). Thus, the General Assembly borrowed the same discovery test that was used generally under Ohio law when fraud or misrepresentations are alleged. See R.C. 2305.09(D).

Zemcik argues that he could not discover the truth about the odometer discrepancies because defendant kept insisting that sixty thousand miles was correct and there was no way to trace the history of the vehicle until the certificate of title was transferred. Zemcik also contends there was no "violation" of the statute until the new certificate of title issued because, until that time, "ownership" remained with the defendant. These arguments glorify form over substance and are inherently inconsistent. *E.g.*, if there was no "violation" until the new certificate of title issued, there could be no fraudulent concealment of a nonviolation.

■ Zemcik's right to claim "fraudulent concealment never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discover-

ed the facts at issue." *Birkett Williams Ford, Inc. v. East Woodworking Co.* (1982), 8 Ohio App.3d 231, 234, 8 OBR 304, 307, 456 N.E.2d 1304, 1307–1308. Furthermore, the chain of title to the truck was a public record in the clerk of court's office where an elementary search would have revealed the recorded previous title to LaPine from County Sanitation, Inc. of Florida and the warning of the unreliability of the dashboard odometer. Review of that, however, would have given Zemcik no more information than he had already discovered, *i.e.,* that the dashboard odometer mileage, 60,543, was unreliable. By January 28, 1992, Zemcik knew this and, through his attorney, was already pursuing remedies of rescission or a replacement truck. To claim, as Zemcik does, that he had no way of investigating the odometer problem is without merit.

Failure to exercise due diligence when documentary evidence is available and known to Zemcik that should put him on notice of fraud does not prevent the running of a fraud statute of limitations. As this court stated in *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 454, 635 N.E.2d 1326, 1333:

"Under R.C. 2305.09, a cause of action for misrepresentation must be brought within four years after the misrepresentation was or should have been discovered. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206; *Venham v. Astrolite Alloys* (1991), 73 Ohio App.3d 90, 596 N.E.2d 585, motion to certify overruled (1991), 62 Ohio St.3d 1422, 577 N.E.2d 1105.

"No more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. *Id.;* see *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284. .

"Once sufficient indicia of misrepresentation are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false sense of security to toll the period of limitations. See *Kimmelman v. Advest, Inc.* (March 19, 1993), Lucas App. No. 920177, unreported, 1993 WL 77192."

Similar legal principles were even more recently expressed by this court in *Aluminum Line Products Co. v. Brad Smith Roofing Co.* (1996), 109 Ohio App.3d 246, 260, 671 N.E.2d 1343, 1352, as follows:

" 'Under Ohio Revised Code 2305.09, a cause of action for fraud must be brought within four years after the fraud was *or should have been discovered.* No more than a reasonable opportunity to discover the fraud is required to start the period of limitation. *Gaudin v. K.D.I. Corp.,* 417 F.Supp. 620, 629 (S.D.Ohio 1976) aff'd, 576 F.2d 708 (6th Cir.1978). Information sufficient to alert a

reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. *Militsky v. Merrill, Lynch, Pierce, Fenner and Smith,* 540 F.Supp. 783, 787 (N.D.Ohio 1980). Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false security to toll the statute. *Id.* at 786–787. (Emphasis added.)' *Au Rustproofing Ctr. v. Gulf Oil Corp.* (C.A.6, 1985), 755 F.2d 1231, 1237. See *Investors REIT One* [*v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206] *supra,* paragraph two of the syllabus." See, also, *Snell v. Salem Ave. Assoc.* (1996), 111 Ohio App.3d 23, 42–43, 675 N.E.2d 555, 567–569.

There is no question here that Zemcik knew in January 1992 that there was something wrong due to the odometer discrepancies. He brought it to his lawyer's attention. The lawyer wrote a letter pointing to the discrepancies and threatening litigation if rescission was not granted or settlement reached. Zemcik was not entitled to wait nine months until title transferred and then argue that the statute was tolled in the interim.

Zemcik's claim to avoid the statute of limitations fares no better if, by analogy, we refer to the "cognizable event" standard of discovery used in malpractice and other tort cases. Thus, the Supreme Court has stated in malpractice cases that the statute of limitations commences when there is a "cognizable event" that should lead the plaintiff to believe that a wrong has occurred or that puts the plaintiff on notice of the need to pursue his remedies.

In language that applies here, the Supreme Court in *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 548, 589 N.E.2d 1284, 1287, stated:

"In Ohio, a cause of action for medical malpractice does not accrue until the patient discovers, or should have discovered in the exercise of reasonable care and diligence, the resulting injury."

The court went on to explain a "cognizable event" and stated at 549, 589 N.E.2d at 1287–1288:

"A 'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which she complains is related to a medical diagnosis, treatment or procedure that the patient previously received.

"Moreover, *constructive* knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. Rather, the

'cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." (Citations omitted and emphasis *sic*.)

The court noted in *Flowers* that the "cognizable event" test is the standard discovery rule in all tort litigation:

· "This interpretation of the 'cognizable event' rule places the plaintiff and defendant in malpractice actions on the same footing as plaintiffs and defendants in other tort litigation. In an automobile accident resulting from a blowout, for example, additional time is not given to (1) discover whether the tire was defective or (2) learn the identity of the manufacturers and sellers of the tire." *Id.* at 550, 589 N.E.2d at 1288.

The court's comments in *Flowers* are equally applicable to the discovery standards set forth in R.C. 4549.49(B). In the instant case, the cognizable event occurred in January 1992 when Zemcik discovered the odometer discrepancies, reported them to his lawyer, and sought rescission, not the date when Zemcik received his formal certificate of title in October 1992, identifying the source of the discrepancy.

Assignment of Error III is sustained. The trial court should have granted a summary judgment to LaPine on the statute of limitations. LaPine's other assignments of error are moot and need not be addressed. App.R. 12(A)(1)(c).

The judgment is reversed, and judgment is entered for defendant-appellant.

*Judgment accordingly.*

PATRICIA ANN BLACKMON, P.J., and ROCCO, J., concur.