JOURNAL ENTRY AND OPINION
{¶ 1} New party defendant-appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National") appeals from the trial court's decision that granted plaintiff-appellee Ferro Corporation's ("Ferro") motion for summary judgment on its supplemental petition to satisfy a judgment obtained against National's insured, Blaw-Knox Food Chemical Equipment Company ("Blaw-Knox"). After careful review, we affirm in part and reverse and remand in part.
 {¶ 2} In 1990, Blaw-Knox contracted with Ferro for the sale of a "3000 gallon reactor". Ferro also opted to purchase a stainless steel liner from Blaw-Knox as reflected on the purchase order.
 {¶ 3} Blaw-Knox shipped the reactor and the liner to Ferro in January 1991. After experiencing problems in operations, Ferro had the reactor unsealed in 1992 and discovered that the liner had collapsed. Ferro then asserted various tort and contractual claims against Blaw-Knox and another defendant arising from the design, manufacture and sale of the high pressure chemical reactor. In September 1995, the defendants moved for summary judgment. The court granted partial summary judgment to Blaw-Knox on Ferro's tort claims against it. The court found that the precedent of Chemtrol Adhesives, Inc. v. American Manufacturers Ins. Co.
(1989), 42 Ohio St.3d 40, precluded Ferro's claims for fraud, negligent misrepresentation, strict liability in tort, and negligence.
 {¶ 4} On June 12, 1997, Ferro commenced a separate action against the same parties and again asserted claims arising from the design, manufacture, and sale of the reactor and liner. In that action, Ferro alleged to have suffered damages to "peripheral plant equipment, including, but not limited to twenty (20) other tanks, reactors, valves, pipes, as well as damage to the plant housing the high pressure chemical reactor purchased by Ferro from Blaw-Knox." (R. 136 Exh.B ¶ 6).
 {¶ 5} On July 3, 1997, this court reversed a part of the trial court's award of summary judgment to Blaw-Knox in the first filed action. See Ferro Corp. v. Blaw-Knox Food Chemical Equip. Co.
(1997), 121 Ohio App.3d 434, 441. In that appeal, we addressed the issue of "physical damage to property other than the Reactor in question" and found that Ferro had alleged such damage. Id. at 442-443.[1] It was further determined that Ferro had "made a claim for harm to the liner of the reactor, which is not the `product itself' but is alleged to be an `attachment' to the product." Id. On that basis, this court concluded that genuine issues of material fact existed concerning the characterization of the liner as "the product itself" in relation to Ferro's negligence claims against Blaw-Knox's co-defendant. SeeChemtrol, supra.; Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.
(1995), 73 Ohio St.3d 609; and R.C. 2307.73.
 {¶ 6} The cases were consolidated and proceeded to a jury trial.
 {¶ 7} In May 1999, the jury found that Blaw-Knox breached its contract with Ferro during the applicable warranty period and that Blaw-Knox made negligent misrepresentations of material fact in connection with the sale of the reactor to Ferro. The court entered judgment on the jury verdict which awarded damages to Ferro and against Blaw-Knox in the amount of $1,182,000.00. According to jury interrogatories, the jury apportioned the damages as follows: $832,000.00 for damages for "the costs of repairing the reactor, stainless steel liner, and other equipment connected to the reactor"[2] and $350,000.00 for lost cash flows.
 {¶ 8} On June 25, 1999, National issued a letter denying indemnification coverage to Blaw-Knox in this case. Thereafter, Ferro filed a supplemental petition against National seeking to satisfy the judgment rendered against Blaw-Knox pursuant to R.C. 3929.06. Neither party disputes that the policy applicable to this matter is the commercial general liability policy issued by National to Blaw-Knox with effective dates of October 1, 1992 to October 1, 1993 (the "policy"). Both Ferro and National moved for summary judgment under the terms of that policy. The trial court granted Ferro's motion and denied National's motion. National appeals assigning the following errors for our review:
 {¶ 9} "I. The lower court erred in denying National Union's motion for summary judgment.
 {¶ 10} "II. The lower court erred in granting Ferro's motion for summary judgment."
 {¶ 11} We address these assigned errors together since they both challenge the trial court's decision concerning the cross-motions for summary judgment. We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585.
 {¶ 12} Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70,1998-Ohio-389.
 {¶ 13} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 14} This action is supplemental to the judgment entered by the trial court on the jury's verdict against Blaw-Knox. The provisions of R.C. 3929.06 permit Ferro to seek to have National satisfy the judgment against Blaw-Knox and provides in relevant part:
 {¶ 15} "(A)(1) If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.
 {¶ 16} "(2) If * * * the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount. Subject to division (C) of this section, the civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor."
 {¶ 17} In a supplemental proceeding under R.C. 3929.06, the parties may not relitigate determinations that were made in the original action. See, generally, Patterson v. Tice (1993), 91 Ohio App.3d 414;Bean v. Metro. Property Liability Ins. Co. (1990),68 Ohio App.3d 732.
 {¶ 18} National contends that the policy issued to Blaw-Knox does not provide coverage in this case because it argues that there is an absence of an "occurrence" as required to trigger coverage under the policy terms and that the "your products" exclusion operates to preclude "property damage" coverage in this case. Both of these contentions rest upon National's opinion that the jury awarded damages solely for damagesto Blaw-Knox's product.
 {¶ 19} Ferro responds that the jury found "property damage" to property other than Blaw-Knox's defective product rendering the "your products" exclusion inapplicable and that, therefore, there was an "occurrence" within the policy's definition of that term.
 {¶ 20} Blaw-Knox paid a premium to National for "Commercial General Liability Coverage." Under the heading "SECTION I — COVERAGES" this policy, in pertinent part, provides that National "will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." However, the policy provides this coverage only if "(1) [t]he `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory;' and (2) the `bodily injury' or `property damage' occurs during the policy period."
 {¶ 21} There is no allegation of bodily injury in this case. The policy defines "property damage" as follows: "a. [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the `occurrence' that caused it."
 {¶ 22} The policy defines an "occurrence" in Section V of the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
 {¶ 23} National does not contend that there has been no "property damage" under the definition of the policy, but rather asserts that coverage is precluded by the "your product" exclusion of the policy and that without damage to something beyond the insured's product there has been no "occurrence."
 The "your product" exclusion {¶ 24} The exclusion appearing in paragraph (k) of the exclusions to the coverages contained in Section I of the policy provides that the "insurance does not apply to * * * (k) `Property damage' to `your product' arising out of it or any part of it." "Your product" is defined in Section V and in pertinent part as follows:
 {¶ 25} "a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
 {¶ 26} "(1) You;
 {¶ 27} "* * *
 {¶ 28} "b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
 {¶ 29} "`Your product includes:
 {¶ 30} "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your product;'"
 {¶ 31} Where there is damage to other property caused by the insured's product, this exclusion does not apply. Acme Steak Co. Inc. v.Great Lakes Mechanical Co. (Sept. 29, 2000), Mahoning App. No. 98-CA-243, citing 9 Couch on Insurance 3d (1997, Supp. 2000) Section 130:8 (holding that the insured's "product" was the component parts it designed and installed and did not include the damages caused to other property damaged thereby, including the pre-existing refrigeration system).
 {¶ 32} The issue presented here is whether the "your product" exclusion applies to exclude coverage where one defective product sold by the insured causes damage to a different product sold by the insured resulting in loss to the third-party purchaser.
 {¶ 33} Ohio law continues to hold that "`where exceptions * * * are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.'" Andersen v.Highland House Co. (2001), 93 Ohio St.3d 547, 549, quoting Home Indemn.Co. of New York v. Plymouth (1945), 146 Ohio St. 96. Further, "in order to defeat coverage, `the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question.'" Id., quoting Reiter, Strasser Pohlman, The Pollution Exclusion Under Ohio Law: Staying the Course (1991), 59 U.Cin.L.Rev. 1165, 1179 [other citation omitted]. Thus, it is well settled that ambiguous terms in an insurance policy are to be strictly construed against the insurer and liberally in favor of the insured. Id.
 {¶ 34} It is Ferro's position that the exclusion does not clearly exclude coverage for damages caused by one defective product to a different product just because both products happen to be sold by the insured. We agree. In other words, one product sold by Blaw-Knox did, in fact, cause damage to other property belonging to Ferro (which Blaw-Knox had also sold to Ferro). As it stands, the exclusion applies to damage "to `your product' arising out of it or any part of it." (Emphasis added). It is not disputed that the liner is not necessary for the reactor to function and as such is not an integral part of the reactor.
 {¶ 35} National contends that the holding in Royal Plastics, Inc.v. State Automobile Mutual Ins. Co. (1994), 99 Ohio App.3d 221, 226, necessarily determines that the "your product" exclusion in National's policy applies to bar coverage for the judgment entered against Blaw-Knox. However, National's "your product" exclusion differs in a significant way from the exclusion examined and applied by this court inRoyal Plastics, which excluded: "`Property damage' to `your product' arising out of it or any part of it and included in the`products-completed operations hazard'". (Emphasis added). In RoyalPlastics, the policy defined "products-completed operations hazard" to include property damages "occurring away from premises you own or rent and arising out of `your product'". Id. Accordingly, damages caused by one product to other property was thereby excluded. That is not the case here. While National's policy contains a similar definition for the term "products-completed operations hazard," it is not made a part of the "your product" exclusion to the property damage coverage part[3]. National, as drafter of the policy, had the opportunity to similarly expand the scope of exclusion k but did not do so.[4]
 {¶ 36} While under the clear terms, damages to the liner itself fall under the "your product" exclusion, the terms of the exclusion do not, however, clearly exclude coverage for damage to the insured's product caused by another of its product. Accordingly, strictly construing the language against the insurer and liberally in favor of the insured as we must, the "your product" exclusion does not bar coverage to damages awarded above and beyond those apportioned for the liner itself.
 {¶ 37} We further disagree with Blaw-Knox's contention that the jury awarded damages solely for damage to products sold by Blaw-Knox. Jury interrogatory number 28 posits "[w]hat portion of Ferro's damages, if any, is for the costs of repairing the reactor, stainless steel liner, and other equipment connected to the reactor, if any, to Ferro?" (Emphasis added).
 {¶ 38} The jury apportioned $832,000 of damages in response to this interrogatory. This figure was not further apportioned among each particular item of damage identified in the interrogatory. The jury made no finding as to which of the listed items constituted Blaw-Knox's products.
 {¶ 39} In this case, Ferro clearly alleged damage to property beyond that of the liner and reactor as follows:
 {¶ 40} "In addition to the damage suffered by the high pressure chemical reactor, Ferro also suffered damage to peripheral plant equipment, including, but not limited to twenty (20) other tanks, reactors, valves, pipes as well as to the plant housing the high pressure chemical reactor purchased by Ferro from Blaw-Knox." (Complaint ¶ 6).
 Occurrence {¶ 41} An "occurrence" requires "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Relying in part on the expertise of Alan Windt[5], National argues that because damage allegedly only occurred to Blaw-Knox's own product, there has been no occurrence. Windt opines as follows: "`Many courts have held that the simple failure of the insured to provide an adequate product does not constitute an occurrence/accident. The better rule is that when an insured's defective work/product has injured some other property, there is an occurrence.'" (Aplts. Brf. Appendix 6). This is in accord with Ohio law. See Acme, supra.
 {¶ 42} It has been previously determined that the jury did find damage to "some other property" as a result of the defective liner sold by Blaw-Knox. Accordingly, there was an "occurrence" under the definition of the policy.
 {¶ 43} For the foregoing reasons, we find that the "your product" exclusion applies only to bar coverage for damages to the liner itself. Accordingly, we sustain the first and second assignments of error to the extent that it was improper to grant summary judgment to Ferro and deny summary judgment to National for those damages. The judgment is affirmed in other respects.
Judgment affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANNE KILBANE, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).
[1] We found that loss of customer good will and the erosion of its reputation in the speciality chemical manufacturing marketplace constituted "property damage". Id.
[2] There was no explicit finding by the jury as to which of these items it considered to be products of Blaw-Knox.
[3] Under similar factual circumstances, another appellate court examined the exact same "your product" exclusion that is contained in the National policy and found that it did not exclude coverage as a matter of law. Acme, supra.
[4] This is underscored by the fact that National made the completed products operations hazard part of the "your work" exclusion in Paragraph l of Section I which is not at issue here.
[5] Author of Windt, Insurance Claims and Disputes (West, 1981 First Edition, 1988 Second Edition and 1995 two volume Third Edition).