JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Lynn Straka appeals the trial court's granting summary judgment in favor of SWA, Inc., dba Century Oak Care Center ("SWA"). We find no merit to the appeal and affirm.
 {¶ 2} SWA filed suit for payment for residential nursing and extended care services it rendered to Straka's mother. SWA operated a skilled nursing facility known as Century Oak Care Center, where Straka's mother, Helen Hosta, was admitted in February 2001. Due to Hosta's medical condition, she was unable to personally sign the admission agreement that governed the terms and conditions of her admission to the facility. Hosta's daughter, Roberta Zapotechne, reviewed the contract and signed it on behalf of herself and Straka. When Hosta was originally admitted, her care was covered by Medicare Part A. However, once those benefits expired Zapotechne and Straka applied for Medicaid on their mother's behalf in March 2001. The original Medicaid application was denied because Hosta's financial resources were in excess of eligibility limits for the program.[1]
 {¶ 3} On August 24, 2001, SWA filed suit against Straka seeking payment for amounts due and owing for services that it rendered to Hosta. Straka answered the complaint, claiming that she did not sign the contract and that billing procedures under Medicaid and Medicare regulations prohibit imposing personal liability on a third party.
 {¶ 4} Straka also filed several counterclaims. She alleged that the language set forth in the admission agreement constituted negligent misrepresentation, false and fraudulent misrepresentation, an unfair and deceptive act or practice in violation of R.C. 1345, an unconscionable act pursuant to R.C. 1345, and that a violation of R.C. 1345 permits any consumer to seek declaratory judgment, an injunction, or other appropriate relief against the act or practice that violated R.C. 1345. These claims all arose out of her contention that nursing homes are prohibited by federal and state regulations from imposing financial liability on third-party guarantors.
 {¶ 5} Straka also contended that a provision in the agreement informing the contractee that "it is a federal crime to unlawfully divest assets to become Medicaid eligible" was a false and misleading statement because that was not the law in February 2001 when the contract was signed.
 {¶ 6} After learning at Straka's deposition that she did not personally sign the agreement, SWA dismissed its claim against Straka without prejudice and filed an amended complaint asserting claims of unjust enrichment and fraudulent conveyance against Hosta. Because the amount due and owing was eventually paid in full, SWA dismissed its claims against Hosta and the matter proceeded solely on Straka's counterclaims.
 {¶ 7} The parties filed motions for summary judgment regarding the counterclaims. On October 30, 2002, the trial court granted summary judgment in favor of SWA and denied Straka's motion.
 {¶ 8} Straka assigns two assignments of error on appeal. We will address them together because they both relate to the trial court's granting summary judgment in favor of SWA, which resulted in its denial of Straka's motion for summary judgment.
 {¶ 9} Appellate review of summary judgments is de novo. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La PineTruck Sales Equipment (1998), 124 Ohio App.3d 581, 585. The Ohio Supreme Court stated the appropriate test in Zivich v. Mentor SoccerClub (1998), 82 Ohio St.3d 367, 369-370 as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) thereis no genuine issue of material fact, (2) the moving party is entitled tojudgment as a matter of law, and (3) reasonable minds can come to but oneconclusion and that conclusion is adverse to the nonmoving party, saidparty being entitled to have the evidence construed most strongly in hisfavor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, paragraph three of the syllabus. The party moving forsummary judgment bears the burden of showing that there is no genuineissue of material fact and that it is entitled to judgment as a matter oflaw. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264,273-274."
 {¶ 10} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 11} Straka's counterclaims fail on several grounds. First, we find that Straka did not have standing to seek damages regarding the enforcement of the contract or to allege violations of the Ohio Consumer Sales Practice Act. She admittedly was not a party to the contract and was not the consumer involved in the contract because she did not sign the agreement. A "consumer" is defined by R.C. 1345.01(D) as "a person who engages in a consumer transaction with a supplier." Simply because Straka was sued by SWA does not mean she engaged in a "transaction" with SWA.
 {¶ 12} Pursuant to Civ.R. 17, a civil action must be prosecuted by the real party in interest. State ex rel. Dallman v. Court of CommonPleas (1973), 35 Ohio St.2d 176, 178. A party will lack standing to invoke the jurisdiction of the court unless the party in an individual or representative capacity possesses some real interest in the subject matter of the action. Id. at syllabus. "An interest which warrants making a person a party is not an interest in the action merely, but some interest in the subject matter of the litigation." In re Highland HolidaySubdivision (1971), 27 Ohio App.2d 237, 240.
 {¶ 13} "The real party in interest is generally considered to be that person who can discharge the claim on which suit is brought * * * [or] is the party who, by substantive law, possesses the right to be enforced." Holiday Subdivision, supra, at 240. Thus, a plaintiff cannot sue upon a contract to which the plaintiff was not a party. See, W.Clermont Edn. Assn. v. W. Clermont Bd. of Edn. (1980), 67 Ohio App.2d 160,162-163.
 {¶ 14} Straka maintains in her appellate brief that since she "was not seeking enforcement of the Admission Agreement, but rather was defending herself against a baseless suit filed by appellee," she did have standing to bring the claims. However, the claims she raised were not appropriate for obtaining such relief because she was not a party to the contract. In order to obtain attorney fees for having to defend a baseless suit, Straka should have filed a claim for frivolous conduct in violation of R.C. 2323.51 or Civ.R. 11, which provide the appropriate remedy for defending a baseless suit. However, we express no opinion whether such a claim would have been successful.
 {¶ 15} Even if Straka did have standing to bring the suit, we find that the trial court did not err by entering judgment in favor of SWA. Although Straka contends that SWA could not sue to force a guarantor to pay nursing home fees, the law is not as broad as Straka contends. The provisions cited by Straka only prevent the nursing home from requiring a guarantor to sign the nursing home agreement as a condition of admission. 42 U.S.C.A Section 1395i-3(c)(5)(A) provides in part:
"[W]ith respect to admission practices, a skilled nursing facility must * * * (ii) not require third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility."
 {¶ 16} Ohio Adm. Code Section 5101:3-3-02(E) permits a nursing home to sue for payment of fees assumed voluntarily by a guarantor. It states in pertinent part:
"A provider of a NF [nursing facility] * * * shall not: * * * (4)Require a third party to accept personal responsibility for paying thefacility charges out of his or her own funds. However, the facility mayrequire a representative who has legal access to an individual's incomeor resources available to pay for facility care to sign a contract,without incurring personal financial liability, to provide facilitypayment from the individual's income or resources if the individual's costof care is not being paid by medicare or another third party payor. * * *Notwithstanding the above, this provision does not prohibit a third partyfrom voluntarily making payment on behalf of an individual."
 {¶ 17} The evidence in the instant case indicates that SWA made no representations that a guarantor was necessary to admit Hosta. Both the admissions officer and the president of SWA denied that such representations were made. Straka could not personally refute this because she was not present at the time the contract was signed. She also failed to present any evidence to the contrary from her sister, who was present at the time the contract was entered.
 {¶ 18} We also find no merit to Straka's claim regarding the statement in the agreement advising the contractee that "it is a federal crime to unlawfully divest assets to become Medicaid eligible." Although it was an incorrect statement, Straka admitted in her deposition that neither she nor her family were damaged by the statement. Its purpose was merely informational and not a contract term.
 {¶ 19} Therefore, the trial court did not err by granting summary judgment for SWA and denying Straka's motion for summary judgment. Accordingly, Straka's assignments of error are overruled.
Judgment affirmed.
ANN DYKE, P.J. and DIANE KARPINSKI, J. CONCUR
[1] While the suit was pending, Straka filed an appeal of the denial of her mother's Medicaid application and the application was thereafter granted on November 28, 2001.