JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Margaret L. Griffith ("appellant") appeals the trial court's decision granting summary judgment to defendants-appellees University Hospitals of Cleveland ("UHC"), et al., ("appellees"). Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} According to the case, appellant, acting as personal representative of the estate of Juliet Marie Wiles, the decedent ("Juliet"), filed this medical malpractice/wrongful death action against University Hospitals of Cleveland ("UHC"), Robinson Memorial Hospital ("RMH"), six doctors, and one nurse. She argued that the care given to Juliet at RMH from June 11 to June 15, 2000, and the care given at the UHC emergency room on June 15 to June 16, 2000, fell below the standard of care.
 {¶ 3} UHC filed a motion for summary judgment on July 2, 2003. The trial court granted UHC's motion for summary judgment in its August 20, 2003 journal entry. Appellant filed a notice of voluntary dismissal on February 13, 2004, in which she dismissed, without prejudice, all remaining defendants in the above-captioned case (i.e., RMH, Dr. Strachan, Dr. Parker, Dr. Birchall, and Dr. Kirkpatrick) pursuant to Civ.R. 41(A)(1). On February 19, 2004, the trial court journalized an entry dismissing the case without prejudice. On March 8, 2004, appellant filed a notice of appeal from the trial court's journal entry granting summary judgment in favor of UHC.
 {¶ 4} According to the facts, this case involved medical care rendered to Juliet at two different hospitals, UHC and RMH, in 1999 and 2000.[1] However, this appeal only involves the patient care at UHC rendered on June 15 through June 16, 2000 in their emergency room. Juliet became dissatisfied with the treatment she was receiving at UHC and left the emergency room. She and her sister left the hospital on their own accord and without permission from the hospital or its staff. Juliet died approximately two days after leaving the hospital.
 {¶ 5} Juliet first began experiencing symptoms in 1999, when she started to experience headaches, dizziness, and a general lack of coordination. Her condition continued to deteriorate and she eventually went to RMH for further evaluation and treatment. Juliet presented to Dr. Haver at RMH with the following reported and/or documented symptoms: inability to walk or stand for weeks prior to admission, inability to talk/blurred speech, decreased mental state, chest heaviness, pressure to brain, dizziness, aches in joints, numbness and tingling in hands, low grade fever, tachycardia, agitation/irritability, elevated white blood cell count, depressed immune system, and suspected infectious or inflammatory process. Dr. Haver's diagnostic impression was leukocytosis, obesity, vertigo, and intermittent myoclonic jerks with atypical seizure.
 {¶ 6} On June 15, 2000, after four days of tests and interviews, Dr. Strachan decided to transfer Juliet to the RMH unit for psychiatric evaluation.[2] Both Juliet and her sister, Amy Sharp ("Amy"), were upset at RMH's decision. Amy transferred Juliet to UHC approximately two hours later and informed UHC of the prior testing and outcome at RMH. She stated that she and Juliet had come to UHC to obtain new testing leading to diagnosis and treatment.
 {¶ 7} When Juliet arrived at the UHC emergency room, she was treated by a series of oncall physicians. These included two defendants: Dr. Cassandra Kirkpatrick and Dr. Curtis Birchall. In addition, a number of residents saw Juliet during her brief stay, including a neurological resident.
 {¶ 8} Juliet disclosed her medical history and presented initially to Dr. Kirkpatrick with at least the following reported and/or documented symptoms: elevated temperature, elevated blood pressure, elevated heart rate, low lymphocyte level, elevated ESR (sedimentation rate), elevated CK (creatine kinase), elevated alkaline phosphatase level, pressure on the brain, low red blood cell count, low hemoglobin level, low hematocrit level, increased vertigo, and shakes.[3]
 {¶ 9} The next morning, Dr. Birchall, the chairman of the emergency room unit, assumed Juliet's care, reviewed her medical records and consulted with RMH's staff. Dr. Birchall told Juliet that he would only authorize the same tests already performed at RMH. He then announced that he was admitting Juliet to UHC's mental health unit. Juliet and her sister became upset with the fact that UHC wanted to follow the same course of action as RMH. Therefore, Juliet and Amy left the hospital without its recommendation and went home. Unfortunately, after a couple of days at home, Juliet died. On June 20, 2000, the Summit County Coroner's Office initiated a postmortem examination of Juliet's body. Based upon scientific findings, the coroner ruled several months later that she had died from meningoencephalitis.
 II. {¶ 10} Because of the substantial interrelation between appellant's three assignments of error, we shall address them together. Appellant's first assignment of error states the following: "Because defendant-appellee and its agents and employees owed a duty of care to plaintiffappellant's decedent, the trial court committed prejudicial error in granting summary judgment to defendant-appellee."
 {¶ 11} Appellant's second assignment of error states the following: "Because plaintiffappellant provided expert testimony as to the relevant standard of care applicable to defendantappellee's agents and employees, the trial [sic] committed prejudicial error in granting summary judgment to defendant-appellee."
 {¶ 12} Appellant's third assignment of error states the following: "Because defendantappellee may be held vicariously liable for the medical negligence of its ER physicians and nurses, the trial court committed prejudicial error in granting summary judgment to defendant-appellee."
 {¶ 13} Appellate review of summary judgments is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105;Zemcik v. La Pine Truck Sales Equipment (1998),124 Ohio App.3d 581, 585. Civ.R. 56(C), in part, provides that summary judgment shall be rendered forthwith if the pleadings, depositions, affidavits timely filed in the action show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment shall not be rendered until it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 14} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
 {¶ 15} A claim for medical negligence must establish, by a preponderance of the evidence, the following elements through expert medical testimony: (1) duty and prevailing standard of care owed by defendant to plaintiff; (2) defendant's failure to meet the standard of care; and (3) evidence that said failure was the proximate cause of plaintiff's injuries. Bruini v. Tatsumi
(1976), 46 Ohio St.2d 127.
 {¶ 16} In the case sub judice, Juliet made a conscious decision to leave UHC on her own accord without the knowledge or permission of the hospital. She did not tell the doctors, nurses, or anyone else at UHC that she was leaving the emergency room. She just left the emergency room without informing anyone. According to appellant, Juliet "resolved to leave University Hospitals in order to rest at home in the comfort of her children" and "did not seek further treatment."[4]
 {¶ 17} Appellant's complaint alleges that two attending physicians in the UHC emergency room, Curtis Birchall, M.D. and Cassandra Kirkpatrick, M.D., were UHC employees. However, these physicians were independent contractors, not employees of UHC, at the time. Furthermore, Juliet signed a consent form, authorizing treatment, which included the following statement:
{¶ 18} "I recognize and understand that the physicians,including, but not limited to emergency department physicians,who provide services at the Hospital, with the exception ofresidents, are independent practitioners and not employees oragents of the Hospital. The Hospital is not responsible for theacts or omissions of physicians who are not directly controlledby the Hospital."[5]
 {¶ 19} Immediately above Juliet's signature on the consent form, the following statement appeared:
{¶ 20} "I am the patient or authorized to sign this document.I have read all the above and understand its terms."
 {¶ 21} In addition to the fact that Juliet left without the recommendation of the hospital and the signed consent form, her experts did not advance her cause. In order to support her case, appellant had three experts present opinions about the care rendered at UHC. Two of the experts, Stephen P. Blatt, M.D. and Arthur Kaufman, M.D., directed their opinions solely to the medical care provided by physicians and did not comment on the conduct of the UHC nurses. The other expert, Marie Zwiercan, R.N., stated that she believed that the nurses' conduct fell below the standard of care because nurses "watched her leave and did not try to stop and educate her on the benefits at staying at the hospital for treatment. There is no documentation that they attempted to notify the physician to speak with her before she left."[6]
 {¶ 22} We find that the trial court properly granted summary judgment because under Ohio law an emergency room nurse has no duty to interfere with an individual who leaves the emergency room without telling anyone and who refuses treatment. A physician, nurse or hospital commits a battery by treating a patient without the patient's consent. Leach v. Shapiro, Summit App. No. 11238, 1984-Ohio-11217. Under Ohio law, medical diagnoses, care and treatment, are beyond the scope of the nursing practice, and the evaluation of a patient's capacity to give consent is made by a doctor, not by a nurse. See R.C.4723.01(B), 4723.151(A) and 4731.34(A)(3)(a)(b).
 {¶ 23} Furthermore, we do not agree with appellant's assertion that Juliet lacked the mental capacity to make an informed decision about her medical condition. Juliet disclosed her medical history and signed a consent form in clear handwriting. Appellant later claimed that Juliet was incompetent at both RMH and UHC. However, Juliet's actions, as well as Amy's actions, do not bear this out. For example, Amy respected all of the decisions Juliet made, facilitated her decisions to leave both hospitals and never told anyone at either hospital that Juliet was incompetent. In the case at bar, appellant failed to present sufficient evidence to raise a genuine issue of material fact regarding the relationship between UHC and Juliet during her stay in June 2000. We find there are not genuine issues of material fact remaining in the case in which reasonable minds may differ.
 {¶ 24} Appellant identified six experts in support of her claims. However, as previously stated, only three of them presented opinions concerning the care rendered at UHC. Moreover, two of those experts directed their opinions solely to medical care provided by physicians and did not comment on the conduct of the UHC nurses. The expert who did address the conduct of the nurses failed to apply it to UHC. Contrary to appellant's assertion, Nurse Zwiercan did not state in either report that the UHC nurses failed to report significant changes of Juliet's symptoms to the emergency room physicians. In Nurse Zwiercan's initial report, she made these comments with respect to the nurses at RMH, not UHC.[7] Appellant argues that UHC should be held liable for the acts of its emergency room doctors and nurses; we disagree. We find that the trial court properly granted summary judgment in this situation. UHC gave clear notice to Juliet that the attending physicians in the emergency room were independent contractors, not employees of UHC. Furthermore, Juliet terminated the physician-patient relationship when she abruptly left the emergency room without completing treatment.
 {¶ 25} Appellant's first, second and third assignments of error are hereby overruled.
Judgment affirmed.
It is ordered that said appellees recover of said appellant costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J.,* concurs and Celebrezze, Jr., J., concurs injudgment only.
* Judge Anne L. Kilbane concurred in this Journal Entry and Opinion prior to her death on November 23, 2004.
[1] Complaint, paragraphs 10-25.
[2] Plaintiff's combined memorandum in opposition to motion for summary judgment, p. 4.
[3] Plaintiff's combined memorandum in opposition to motion for summary judgment, p. 6.
[4] Complaint, paragraphs 25, 38.
[5] UHC consent form, exhibit B, appellee's brief.
[6] Zwiercan's initial report, exhibit C, p. 11.
[7] Appellant's brief, p. 11.