JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, Mark Wells and Amy Woodard, appeal the decision of the trial court, which denied their motion for partial summary judgment and granted summary judgment in favor of appellees, Safeco National Insurance Company, Safeco Insurance Company of America and Public Entity Pool of Ohio, pertaining to various insurance coverage issues.
 {¶ 2} On July 16, 1999, an intoxicated tortfeasor, William Orchard, struck appellants, Mark Wells and Amy Woodard, with his motor vehicle. At the time of the accident, the appellants were riding on a motorcycle owned by Wells. As a result of the accident, the appellants claim to have suffered extensive and permanent physical injuries that required hospitalizations, continued treatment, lost time from work, and impairment of future earning capacity.
 {¶ 3} At the time of the accident, Orchard was insured by Allstate Insurance Company with liability limits of $100,000 per person. On October 5, 2000, Allstate tendered its liability limits of $100,000 per person to both Wells and Woodard. The appellants thereby executed a written release of their claims against Orchard.
 {¶ 4} At the time of the accident, appellant Wells possessed several insurance policies. The motorcycle Wells was operating was covered by an insurance policy issued by Progressive Insurance Company. The Progressive policy contained uninsured/underinsured ("UM/UIM") coverage in the amount of $500,000 per occurrence. After an investigation, Progressive tendered its policy limit of $500,000 per occurrence, less the $200,000 paid by Allstate, for a total of $300,000; Wells received $115,000 and Woodard collected $185,000. The appellants executed a settlement agreement and released all claims against Progressive.
 {¶ 5} Appellant Wells had two additional insurance policies at the time of the accident that were issued by Safeco National Insurance Company and Safeco Company of America (hereinafter both referred to collectively as "Safeco"). Safeco issued an automobile policy with liability and UM/UIM coverage limits in the amount of $500,000. Safeco also issued a personal umbrella policy with liability and UM/UIM coverage limits of $1,000,000.
 {¶ 6} Appellants made UM/UIM claims under the two Safeco policies after the tortfeasor was released from liability and two years after the accident occurred.
 {¶ 7} Appellant Woodard then sought additional coverage under an agreement issued to her employer, MetroHealth Medical Center, by Public Entities Pool of Ohio ("PEP"). PEP provides for automobile liability coverage in the amount of $2,000,000 and UM/UIM coverage in the amount of $100,000. Woodard sought coverage under this agreement pursuant to the Ohio Supreme Court's ruling in Scott-Pontzer.
 {¶ 8} On July 12, 2001, appellants Wells and Woodard filed separate actions in the trial court. Wells filed complaints against Progressive, Safeco, and several John Does. Woodard filed complaints against State Farm Mutual Insurance Company, State Farm Fire and Casualty Company, Progressive, Safeco, PEP, and several John Does.[1]
 {¶ 9} On July 26, 2001, Progressive filed a motion to consolidate the two actions. The motion was granted, and the cases were consolidated on August 8, 2001. On September 27, 2001, notice of settlement was issued, and defendant Progressive was dismissed. On November 14, 2001, defendant State Farm Mutual Insurance Company was dismissed without prejudice.
 {¶ 10} Thereafter, all remaining parties filed cross motions for summary judgment. On January 13, 2003, the trial court granted the motions for summary judgment in favor of the defendants and denied the plaintiffs' motions. First, the trial court granted State Farm Fire 
Casualty's motion for summary judgment based on the recent holding inDavidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262.
 {¶ 11} Next, the trial court granted Safeco's motion for summary judgment holding:
"The safeco defts' msj is granted per the supreme ct's recent decision in ferrando. The safeco defts were prejudiced by the ¶s' unreasonable delay in giving notice of their claims."
 {¶ 12} Last, the trial court granted PEP's motion for summary judgment holding:
"Public entities pool's mtn for s.j. is granted. Unlike the policy inScott-Pontzer, there is no ambiguity as to who is an insured, and specifically to this policy, as to the term `member.' the terms are unambiguous and there is no coverage."
 {¶ 13} The appellants appeal the trial court's decision granting summary judgment in favor of Safeco and PEP. Appellants do not appeal State Farm Fire Casualty's grant of summary judgment.
 {¶ 14} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 15} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 16} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 17} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 18} Appellant sets forth three assignments of error for review.
"I. The trial court erred in granting summary judgment in favor of defendant safeco on the automobile and umbrella policies. there were genuine issues of material fact as to whether the notice provisions in those policies were breached and, if so, whether safeco was materially prejudiced thereby."
 {¶ 19} The appellants argue that an affidavit sworn by Joseph Gullo, the claim representative for Progressive Insurance, raises a genuine issue of material fact as to whether the appellee was prejudiced by the breach of the prompt notice and subrogation provisions of the Safeco auto and umbrella insurance policies. We agree with the appellants.
 {¶ 20} In Ferrando v. Auto-Owners Mut. Ins. Co. (2002),98 Ohio St.3d 186, the Ohio Supreme Court determined that "when an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice." Id. at ¶ 1 of the syllabus. Further, "when an insurer's denial of uninsured motorist coverage is premised on the insured's breach of a * * * subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." Id. at ¶ 2 of the syllabus. In each instance, an insured's unreasonable delay in giving notice, or an insured's breach of a subrogation provision, is presumed prejudicial to the insurer absent evidence to the contrary. Id.
 {¶ 21} According to Ferrando, the trial court must engage in a two-step inquiry to determine whether the insurer was prejudiced by a breach of notice and/or subrogation provisions. First, the court must determine whether a breach of the provision at issue actually occurred. In making that determination, the court must consider the surrounding facts and circumstances of the alleged breach. Second, if the breach did occur, was the insurer prejudiced so that UM/UIM coverage must be forfeited? If the notice and/or subrogation provisions were breached, a presumption of prejudice is afforded to the insurer; the insured bears the burden of presenting evidence to rebut the presumption.
 {¶ 22} Under Ferrando, questions relating to breach, prejudice, and whether plaintiffs met their burden of proof require the presentation and review of evidence to be considered by the trial court before granting a motion for summary judgment. Pratt v. Safe Auto Ins. (June 26, 2003), Cuyahoga App. No. 81741.
 {¶ 23} In the instant matter, it was improper for the trial court to grant the motion for summary judgment in favor of Safeco as to the automobile and umbrella policies. A genuine issue of material fact remains in which reasonable minds may differ as to whether the breach of the notice and subrogation provisions of the Safeco auto and insurance policies actually prejudiced the insurer. The appellants produced an affidavit sworn to by Progressive's claims representative stating that the tortfeasor, Orchard, did not own any significant assets, thus making subrogation of the claim not worth pursuing.
 {¶ 24} To grant a motion for summary judgment is to rule as a matter of law that the notice and subrogation rights were breached and the insurer was prejudiced by the breach. After it is determined that a breach of a notice or subrogation provision occurred, a motion for summary judgment is only proper if the insured fails to produce any significant evidence to rebut the presumption of prejudice afforded the insurer. In this case, the appellants have produced significant evidence which creates a genuine issue for the finder of fact as to whether the rights of Safeco were actually prejudiced by the delay of notice and breach of the subrogation provisions.
 {¶ 25} In analyzing whether a breach of the notice and subrogation provisions actually occurred, the court should determine whether the tortfeasor is actually insolvent. We note that a tortfeasor who was insolvent at the time of the accident may not be insolvent today or in the future.
 {¶ 26} Furthermore, the appellee claims that the appellants are not "legally entitled to recover" under the Safeco auto and umbrella policies because appellants never filed suit against the underinsured tortfeasor, Orchard, but rather obtained a settlement from him. The appellee relies on Taylor v. Kemper Ins. Co. (Jan. 16, 2003), Cuyahoga App. No. 81360, for this proposition. In Taylor, the court failed to address the issue of whether a settlement had been reached before it determined the appellant was not legally entitled to recover. The question of whether the plaintiff settled with the tortfeasor had not been addressed in the opinion and was only mentioned in one of the appellant's assignments of error. Furthermore, "[b]ecause plaintiffs settled with the tortfeasor, their ability to prove the elements of their claim and recover damages from the tortfeasor is not in issue." Workman v. Carlisle EngineeredProducts, Inc., Cuyahoga App. Nos. 81179 and 81211, 2003-Ohio-293 ¶ 51-52, (discretionary appeal on this issue denied by Workman v. CarlisleEngineered Products, Inc., 99 Ohio St.3d 1415, 2003-Ohio-2504). Appellant's first assignment of error is sustained.
"II. The trial court erred in granting summary judgment to defendant safeco on the umbrella policy. the umbrella policy has follow-form language that provides excess coverage to an insured if the provisions of any of the underlying policies were satisfied. here, as the provisions of any of the underlying motorcycle policy were satisfied, the plaintiffs were entitled to coverage under the umbrella policy and were not required to satisfy additional notice provisions in the umbrella policy."
 {¶ 27} Relevant terms of the Safeco umbrella policy state:
 {¶ 28} "Uninsured/underinsured motorists coverage
 {¶ 29} "We will pay to you or your legal representative, all sums less the retained limit that you are entitled to recover as damages from an uninsured motor vehicle; provided that:
 {¶ 30} "1. Our liability shall be only excess of the retained limit;
 {¶ 31} "2. Uninsured/Underinsured Motorists Coverage under this policy shall apply in accordance with the terms and conditions of the underlying insurance in effect at the time of loss, or in the absence of such underlying insurance, with the terms and conditions of the Uninsured/Underinsured Motorists Coverage in effect on the last renewal date of this policy.
 {¶ 32} "* * *
 {¶ 33} "Conditions
 {¶ 34} "3. Duties after loss.
 {¶ 35} "a. Upon the happening of an occurrence likely to involve us, written notice shall be given as soon as practicable to us or any of our authorized agents. Such notice shall contain:
 {¶ 36} "* * *
 {¶ 37} "11. Our Right To Recover Payment
 {¶ 38} "After making payment under this policy, we will have the right to recover from anyone held responsible. The insured will sign papers and do whatever is required to transfer the right to us, and do nothing to harm this right."
 {¶ 39} Appellants claim this statement in the policy, "2. Uninsured/Underinsured Motorists Coverage under this policy shall apply in accordance with the terms and conditions of the underlying insurance in effect at the time of loss * * *," connotes that, if the appellant complied with all provisions of the Progressive policy, then coverage under the Safeco umbrella policy arises regardless of whether the notice and subrogation provisions of the Safeco umbrella policy were complied with. We find this argument without merit.
 {¶ 40} The appellants are correct in stating that the Progressive policy insuring the motorcycle for UM/UIM benefits is "underlying insurance" pursuant to the Safeco umbrella policy. However, the Safeco umbrella policy is a stand-alone insurance policy containing its own terms and conditions for coverage. Despite the appellants' argument, the conditions of notice and the right of subrogation must be complied with in order for coverage under the umbrella policy to become effective. It would be irrational to have the Safeco umbrella policy provide additional coverage without requiring the insured to comply with the notice and subrogation provisions found in the policy. The two-prong test that is set forth in Ferrando applies to this policy to determine coverage.
 {¶ 41} The appellant's second assignment of error is sustained in part and overruled in part. The trial court's award of summary judgment in favor of the Safeco umbrella is reversed. The Progressive policy is "underlying insurance" to the Safeco umbrella; however, genuine issues of material fact remain as to whether the appellants complied with the notice and subrogation provision of the policy and whether Safeco was prejudiced thereby. (See Assignment of Error I.)
"III. The trial court erred in granting summary judgment to defendant public entities pool of ohio (`pep') and against plaintiff amy woodard. woodard was a `member' entitled to um/uim coverage under that policy, and the policy was subject to the ohio um/uim statute."
 {¶ 42} Appellant Woodard claims that she is afforded UIM coverage under the rationale of Scott-Pontzer for the following two reasons. First, as an employee of MetroHealth, Woodard is a "member" under the term "you" in the PEP agreement; and second, the scope of the employment clause in the PEP agreement does not apply to this cause of action.
 {¶ 43} Appellant Woodard asserts that she is afforded UM/UIM coverage pursuant to the Ohio Supreme Court's ruling in Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. In Scott-Pontzer,
the Supreme Court of Ohio determined that a commercial automobile policy issued to Superior Dairy, Inc. provided benefits to Kathryn, the surviving spouse of Christopher Pontzer. Pontzer was an employee of Superior Dairy, not in the scope of his employment, when he was killed in an automobile accident caused by the negligence of another motorist. The commercial automobile policy issued to the corporation designated Superior Dairy, Inc. as the named insured, and the underinsured motorists section included the following definition of insured:
 {¶ 44} "B. Who Is An Insured
 {¶ 45} "1. You.
 {¶ 46} "2. If you are an individual, any family member.
 {¶ 47} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 48} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 49} The Ohio Supreme Court concluded that the above definition of "insured" was ambiguous in that the term "you" could be construed to include the corporation's employees because a corporation can act only by and through real live persons and cannot suffer bodily injury. Employing the legal principle that ambiguous provisions in an insurance contract will be construed against the insurer, the court concluded that Pontzer was an insured at the time of his death under the underinsured motorists provision of the commercial automobile policy issued to Superior Dairy, Inc.
 {¶ 50} In light of the Ohio Supreme Court's recent decision inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, which limited the holding of Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, 710 N.E.2d 1116 and overruled the holding inEzawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557, 715 N.E.2d 1142, we find the appellants' third assignment of error without merit.
 {¶ 51} In Galatis, the Ohio Supreme Court held, "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorists coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of the employment. Additionally, where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id. at ¶ 62.
 {¶ 52} To be an insured under the limitation of Galatis, appellant Woodard must have been acting within the course and scope of her employment with MetroHealth Medical Center at the time of the accident or meet the definition of a "member" as set forth in the PEP agreement.
 {¶ 53} The PEP agreement provides the following relevant provision,
 {¶ 54} "Section II — who receives benefits
 {¶ 55} "Member means:
 {¶ 56} "A. you, including your governing body, Boards, Commissions or Councils;
 {¶ 57} "B. while acting on your behalf or in your interest, any past, present or future:
 {¶ 58} "1. member of your Governing Body, Boards, Commissions or Counsels;
 {¶ 59} "2. elected or appointed official;
 {¶ 60} "3. employee acting within the scope of their employment;
 {¶ 61} "4. volunteer or student who performs a service for you at your request; or
 {¶ 62} "5. volunteer fire company, volunteer ambulance service or other volunteer emergency services entity.
 {¶ 63} "This does not include any elected or appointed official, Board, Commission, or Council member, employee of volunteer with respect to any automobile owned by such person, unless acting within the scope of their duties for you;"
 {¶ 64} The following facts are undisputed. Woodard was in Michigan, riding as a passenger on a motorcycle at the time of the accident. No argument is made that she was within the scope of her employment or acting on behalf of Metro Health, nor that Woodard has met any other definition to classify her as a "member." Further, Woodard does not argue that she was on the Board, Commission, or Council of MetroHealth. Therefore, since Woodard does not meet any definition of a "member" and was not acting within the course and scope of her employment with MetroHealth, she is denied coverage under the agreement.
 {¶ 65} Since appellant Woodard does not qualify for coverage, we decline to address further arguments concerning the PEP agreement because they are moot. Appellants' third assignment of error is overruled.
 {¶ 66} Judgment of the trial court is affirmed in part and reversed in part.
 {¶ 67} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, J., and Diane Karpinski, J., concur.
[1] None of the John Does in either Wells or Woodard's suits were ever identified.