{¶ 1} Plaintiff-appellant, First American Title Insurance Company ("First American") appeals the trial court's judgment denying its motion for summary judgment and granting summary judgment in favor of defendant-appellant, Chicago Insurance Company ("CIC"). For the reasons set forth below, we affirm.
 {¶ 2} First American is a title insurance company in the State of Ohio. ITA Title Agency, Inc. ("ITA") is an agent of First American. From May 8, 2000 through August 8, 2001, ITA was insured under a Title Errors and Omissions insurance policy issued by CIC.
 {¶ 3} On August 7, 2001, Timothy Taber, President of ITA, notified CIC via letter that First American was seeking damages from ITA for negligence in handling title work and escrows on 24 files for which ITA acted as agent for First American. Subsequently, CIC requested information regarding these claims from Taber on numerous occasions. When Taber failed to respond to these requests, CIC sent Taber a letter dated October 30, 2001 informing ITA that a failure to fully cooperate into the investigation of the claims would result in CIC's refusal to provide coverage for the claims asserted by First American. Taber complied with this request and forwarded more information to CIC.
 {¶ 4} Thereafter, on June 7, 2002, Taber advised CIC that First American would not be pursuing its claims against ITA. On June 18, 2002, CIC followed up these conversations with Taber by sending a letter informing him that CIC was *Page 3 
closing its files and requesting notification should any of the files be reopened. CIC did not hear from ITA or Taber again.
 {¶ 5} On November 18, 2003, First American filed a lawsuit against Taber and ITA in the Cuyahoga County Court of Common Pleas entitledFirst American Title Insurance Company v. ITA Title Agency, Inc., et al., Case No. 514970 ("First American lawsuit"). Defendant Taber failed to appear for trial. Therefore, the trial proceeded without a defense and on September 9, 2004, the trial court entered judgment in favor of First American in the amount of $240,650.00.
 {¶ 6} On February 18, 2005, First American filed the instant action against CIC alleging ITA is covered under its policy for First American's claims and seeking from CIC the amount of the judgment against ITA. After exchanging discovery, on March 30, 2006, CIC filed a motion for summary judgment. One day later, First American filed their motion for summary judgment. On May 12, 2006, the trial court granted CIC's motion for summary judgment and denied First American's motion finding no insurance coverage under the policy of insurance issued by CIC because First American failed to comply with the notice and cooperation provision of the policy.
 {¶ 7} First American now appeals and asserts two assignments of error for our review. First American's first assignment of error states:
 {¶ 8} "The Trial Court committed reversible error in granting Chicago Insurance Company's (hereinafter, "CIC") Motion for Summary Judgment, in its *Page 4 
Order docketed May 12, 2006, and appearing in the Trial Court's Civil Journal at Volume 3558, Page 0697, and finding that there is no insurance coverage under the policy of insurance issued by CIC as a result of non-compliance with the notice and cooperation provisions of that policy."
 {¶ 9} With regard to procedure, we note that we employ a de novo review in determining whether summary judgment was properly granted.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equip. Co. (1997),124 Ohio App.3d 581, 585, 706 N.E.2d 860.
 {¶ 10} Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Civ.R. 56(C); State ex rel. Dussell v. Lakewood PoliceDept., 99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, 791 N.E.2d 456, citing State ex rel. Duganitz v. Ohio Adult Parole Auth.,77 Ohio St.3d 190, 191, 1996-Ohio-326, 672 N.E.2d 654.
 {¶ 11} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v. Mentor SoccerClub, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201. Once the moving party satisfies its burden, the nonmoving *Page 5 
party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 12} CIC argues that ITA, the insured under the CIC insurance policy, failed to cooperate with the prompt-notice provision, and thus, is not entitled to coverage under the policy. First American denies CIC's contention, arguing CIC was not prejudiced by any failure to notify because ITA advised CIC of the potential claims asserted by First American two-years prior to the lawsuit. As did the trial court, we find First American's argument without merit.
 {¶ 13} The prompt-notice provision in this policy states:
 {¶ 14} "B. Assistance and Cooperation of Insured in the Event of Claimor Suit: Upon the insured becoming aware of any negligent act, error, omission or Personal Injury which could reasonably be expected to be the basis of a Claim covered hereby, written notice shall be given by the insured to the Company together with the fullest information obtainable. If Claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by the Insured or the Insured's representative. The Insured shall cooperate with the Company and, upon the *Page 6 
Company's request assist: in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of Damages with respect to which this insurance applies. The insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at the Insured's own cost, voluntarily make any payments, assume any obligation or incur any expense."
 {¶ 15} The prompt-notice provision in the CIC policy mandates that the insured, ITA, immediately forward to CIC any demand, lawsuit or notice of lawsuit. Additionally, the provision requires full cooperation with CIC in defending the claim or lawsuit. Failure to comply with these mandates will result in CIC denying coverage to ITA.
 {¶ 16} In Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, 781 N.E.2d 927, the Ohio Supreme Court held:
 {¶ 17} "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the * * * insurer received notice `within a reasonable time in light of the all the surrounding facts and circumstances.' If the insurer did received notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and * * * coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. *Page 7 
Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut."
 {¶ 18} Id. at 208 (emphasis in original) (citations omitted).
 {¶ 19} Accordingly, our first inquiry is whether ITA failed to provide prompt-notice to CIC of the claims and lawsuit initiated by First American against ITA and whether such a failure was unreasonable. The evidence presented establishes Timothy Taber, President of ITA, notified CIC via a letter dated August 7, 2001 that First American was asserting a number of potential claims against ITA. Subsequently, CIC requested information regarding these claims from Taber on numerous occasions. When Taber failed to respond to these requests, CIC sent Taber a letter dated October 30, 2001 informing ITA that a failure to fully cooperate into the investigation of the claims would result in CIC's refusal to provide coverage for the claims asserted by First American. In the letter, CIC quoted the exact provision in the CIC policy provided above.
 {¶ 20} Thereafter, on June 7, 2002, Taber advised CIC that First American would not be pursuing its claims against ITA. On June 18, 2002, CIC followed up these conversations with Taber by sending a letter informing him that CIC was closing its files and requesting notification should any of the files be reopened. At his deposition, Taber admitted that in June of 2002 he understood that CIC was closing its files in regards to the First American claims and that he was to notify CIC if First American pursued its claims further. Nevertheless, Taber testified that he did *Page 8 
not notify CIC of First American's lawsuit against ITA and that he had no intention of defending the lawsuit. In fact, Taber failed to appear for trial, resulting in the unopposed judgment in favor of First American.
 {¶ 21} Furthermore, First American admittedly cannot present any evidence establishing that ITA informed CIC of the First American lawsuit after being notified that the claims would be closed in June of 2002. Robert Wood, a representative of First American, testified during his deposition that he does not know of any evidence establishing CIC's knowledge of the First American's lawsuit against ITA. Moreover, First American's responses to CIC's discovery fail to identify any evidence indicating notice to CIC of the lawsuit. Instead, the evidence indicates that CIC was first notified of the First American lawsuit against ITA on April 12, 2005 when CIC was served with First American's complaint in this lawsuit. Accordingly, we find ITA completely failed to notify CIC of the lawsuit initiated by First American. Such lack of notice is clearly unreasonable.
 {¶ 22} Finally, First American argues that CIC was on notice that First American did not dismiss their claims against ITA because First American sent two letters to various representatives of CIC in July and September of 2002 after ITA notified CIC that First American was not pursuing its claims. We find First American's argument unpersuasive. The prompt-notice provision in the CIC policy clearly and expressly requires the insured to notify CIC of any claims and/or lawsuits. CIC's contractual obligation lies with its insured, not a third-party. Additionally, as *Page 9 
proffered above, no evidence was presented indicating CIC was notified of the First American lawsuit against ITA that was initiated over a year after the letters were sent. First American's argument is without merit.
 {¶ 23} Having determined that ITA breached the provisions of the policy, a presumption arises that CIC was prejudiced. Ferrando, supra at 208. Therefore, First American is afforded the opportunity to present significant evidence to rebut the presumption of prejudice. Id.;Wells v. Progressive Ins. Co., Cuyahoga App. No. 82458, 2003-Ohio-6635.
 {¶ 24} In the instant case, First American argues that CIC was not prejudiced because it was given notice of the claims two years prior to the First American lawsuit against ITA, thereby affording CIC the opportunity to investigate the claims and determine coverage issues. A review of the evidence indicates, however, that after CIC was notified of the claim in June of 2002, ITA informed CIC that First American was no longer pursuing the claims and that CIC would close its files. In light of this evidence, First American cannot argue that no prejudice exists by asserting that CIC was on notice before the actual breach of the provision occurred. The lack of prejudice cannot precede the moment in time the breach occurred that resulted in the prejudice.
 {¶ 25} Furthermore, such evidence does not rebut the prejudice CIC suffered because of ITA's failure to notify CIC of the actual lawsuit initiated by First American.
"Notice provisions in insurance contracts serve many purposes. * * * It allows *Page 10 
the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims." Ferrando, supra at 205-206. Judgment was rendered before CIC was notified of the First American lawsuit. Clearly, CIC did not have a reasonable opportunity to participate in any way in the underlying litigation.
First American has failed to meet the burden of presenting significant evidence to rebut the presumption or prejudice resulting from ITA's breach of the prompt-notice provision in the CIC policy. Accordingly, the trial court correctly determined that no coverage existed under the CIC policy. We, therefore, overrule First American's first assignment of error.
 {¶ 26} Lastly, as we determined that coverage did not exist under the CIC policy, we find appellant's second assignment of error[1] moot.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] The Trial Court committed reversible error in denying First American Title Insurance Company's (hereinafter, "First American") Motion for Summary Judgment in it's Order docketed May 12, 2006, and appearing in the Trial Court's Civil Journal at Volume 3558, Page 0697, and finding that there is no insurance coverage under the policy of insurance issued by CIC." *Page 1